LOUIS MESTIER *v.* NEW ORLEANS, OPELOUSAS & GREAT WESTERN RAILROAD COMPANY et al.

The articles of the Code 3501 and 3502 fix the prescription resulting from offences and quasi-offences at one year from the time when the *damage* is sustained. The plaintiff can only be entitled to the damages actually proven.

A judgment in a case to which the defendants were not parties or privies, is *res inter alios acta*, and not admissible in evidence. C. C. 2265.

The introduction of another suit in evidence does not, in general, make the testimony on which the judgment was rendered, evidence in the new suit.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J. *Pierre Soulé*, for plaintiff. *M. M. Cohen*, for defendant and appellant.

MERRICK, C. J. This is an action to recover damages. The case was tried by a jury, and they rendered a verdict for $10,000 against the defendant Lanfear; and he appeals.

The facts necessary to be stated are these: The defendant Lanfear, who is a director in the above-named company, is the owner of a tract of land lying upon both sides of the above-named railroad, at a place called· les Coteaux de France, in the Parish of St. Charles. Having a dispute with certain persons also claiming lands upon the railroad, he injoined the railroad company in 1854 *from receiving or transporting the wood, timber and lumber cut or found upon the ridge known as les Coteaux de France.*

In 1857 the plaintiff acquired certain lands lying outside of the lands in controversy, between Lanfear and others on les Coteaux de France, but sufficiently near to make it profitable to deliver lumber for transportation and sale upon the line of the road; and he entered into a contract to deliver the railroad company ten thousand cross-ties at sixty-five cents each. He employed a large number of laborers to get out cross-ties, staves, heads, pickets and wood. His most convenient way to reach the railroad was to transport his wood, &c., in flats upon a bayou called Bayou Crocodile, which either runs through, or is a boundary of the defendant Lanfear's land.

The plaintiff, after progressing with his work for some months, found himself obstructed in delivering his wood and cross-ties to the railroad company, and sending his staves and pickets to market, by the refusal of the company to receive the lumber; (as alleged by the company, on account of the injunction.)

The plaintiff thereupon applied to the defendant's counsel in the injunction suit for permission to deliver his lumber and to transport it to market. This consent was given, without opposition from Lanfear, on the 14th of January, 1858, in these words:

"I have no objection that the New Orleans, Opelousas & Great Western Railroad Company should transport, until further notice, staves, pickets, clapboards and cord-wood from the land of Louis Mestier on the ridge, notwithstanding the injunction in the case of Lanfear and Louis Ranson v. The Company and others. New Orleans, Jan. 14, 1858." Signed, &c.

The plaintiff placed a quantity of cord-wood upon the line of the road and sent off some lumber.

On the 12th day of February, 1858, the defendant Lanfear sent to the President of the Railroad Company the following letter:

"New Orleans, 12 Feb. 1858.

"*Dear Sir:* I beg hereby to notify you that I revoke and annul the suspension in favor of Louis Mestier and J. E. Boutté, granted by my attorney, Mr. Henry St. Paul, of the injunction issued by the Third Judicial District Court, Parish of St. Charles, against the removal of timber from my land extending along the line of the New Orleans, Opelousas & Great Western Railroad *Company*, in township fourteen, south, range twenty, east, in the Southeastern Land District of Louisiana, west of the Mississippi river. I remain always, dear sir, yours respectfully,

(Signed)                                               Amb're Lanfear.

"Wm. G. Hewes, Esq., President New Orleans, Opelousas & Great Western Railroad Company."

A similar note was sent to the plaintiff and J. E. Boutté, with this added: "I require you to discontinue hauling over or depositing on my said land, lumber or any other article, under the penalty of the law against trespassers."

The plaintiff then applied to Lanfear in person to relieve him from the effects of the injunction, and offered to give security, but he was repulsed with rudeness.

In the spring of 1858 the well known Bell crevasse took place, and in May the Labranche crevasse followed and inundated the railroad and swept off and destroyed the lumber and wood of the plaintiff.

This suit to recover the damages thus occasioned, was not instituted until the fifth day of March, 1859, more than one year after the date of the letter of Lanfear to the plaintiff and the President of the Railroad Company.

The defendant has interposed the plea of prescription, and the record contains bills of exception.

It is contended on behalf of the defendant, that inasmuch as the last act done by Lanfear, viz., delivering the two letters above referred to, occurred more than one year previous to the institution of the suit, the demand is barred by prescription, for it is assumed it is the wrongful act, and not the consequential damages resulting from it, that give rise to the action. Several authorities are cited in support of this position, and among others, the case of *Wartelle* v. *King*, 10 An. 655. These authorities do not appear to be in point. In *Wartelle* v. *King*, the injury was occasioned by the act of the party complaining, whose agent removed his own

MESTIER
v.
OPELOUSAS R. R.
fences in consequence of a letter threatening a civil action and a crimina-
prosecution, and that he would cause the fences to be removed.

This Court concluded by saying: "Under these circumstances, the act
of destroying the fences is not to be viewed as the act of defendants, and
the prescription mentioned above commenced running from the 13th day
of April, 1852," (the date of the letter.)

The articles of the Code 3501 and 3502 fix the prescription resulting
from offences and quasi-offences at one year from the time when the *dam-
age* is sustained. The law seems to be clear; and where there is a contin-
uation of a wrongful act, there is no reason why prescription should not
be considered as commencing to run from the date of the sustaining of
the damage.

Take an example: my neighbor wilfully undermines the party wall be-
tween us without my knowledge, and a year afterwards it falls. Shall he
escape by proving that he did the act which occasioned the damage more
than a year previously?

A man secretly saws nearly asunder the beams of a bridge: a year and
a day afterwards, a traveler is maimed by the falling of the bridge from
that cause. Shall the wrong-doer escape by pleading the prescription of
one year; and does the stranger lose his action the moment it has oc-
curred?

It seems to the Court to be quite clear that the article C. C. 3502 should
be construed (in such cases) as it reads, and the prescription should be
held to commence running from the time the damage was sustained. The
plea of prescription is therefore no bar to such damages as are proven to
have happened after the 5th day of March, 1858.

The first bill of exception to which our attention is called by defendant's
counsel is to the reception in evidence of the record of the case of *Lan-
fear* v. *Hunley*, for the purpose of showing that the District Court had
therein rendered judgment against Lanfear, and that the same was on ap-
peal to the Supreme Court. The objection to the record was that it was
*res inter alios acta.*

The decision in the case of *Lanfear* v. *Hunley* was adverse to Lanfear's
title. In testing the admissibility of the evidence, we must confine our-
selves to the bill of exceptions, and we cannot look into the record to see
if it does not contain admissions in the pleadings or documents annexed
which would have been admissible on other grounds. The question is,
was the record admissible for the purpose offered, to wit, to show a judg-
ment against Lanfear? The authorities are quite clear that the testimony
was inadmissible, because Mestier was neither a party nor a privy to that
suit. C. C. 2265.

The reason which excluded the record in the case of *Lanfear* v. *Hunley*
operated with equal force against the right claimed by plaintiff's counsel
in his closing argument to read to the jury a portion of the evidence in
that case; and defendant's bill is well taken on the ground stated in the
same, viz., that the introduction of another suit in evidence does not, in
general, make the testimony on which the judgment was rendered, evi-
dence in the new suit. 3 An. 174; 5 An. 6; 13 L. R. 270.

As it is impossible to know what influence the record of *Lanfear* v. *Hun-
ley* may have had on the verdict of the jury, which seems to be high, we

deem it our duty to remand the case for a new trial. The plaintiff can only be entitled to the damages actually proven.

MESTIER
v.
OPELOUSAS R. R.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower court be avoided and reversed, and that the case be remanded to the lower court for a new trial, with instructions to be governed by the views herein expressed; and that the plaintiff pay the costs of the appeal.

VOORHIES, J., absent.