(89 South. 683)

No. 23142.

### DEAN v. CHICAGO, R. I. & P. R. CO.

(Oct. 4, 1921.)

*(Syllabus by the Court.)*

**Damages** ⬅188(1)—**Limitation of actions** ⬅ .55(7)—**Prescription; in an action against a railroad for drainage damages, the one-year prescription applies, running from date of damage, and plaintiff must show amount of damage.**

An action in damages for alleged impairment of the productiveness of land and partial failure of crops by reason of high water, resulting as alleged, from obstruction to, or interference with, the drainage, will be dismissed, as barred by the prescription of one year, when the evidence shows that the year preceding the institution of the suit was a dry year and, save for the lack of water, the condition of the land as to productiveness and value underwent no change.

Appeal from Fifth Judicial District Court, Parish of Winn; Cas Moss, Judge.

Action by J. Averett Dean against the Chicago, Rock Island & Pacific Railroad Company. Judgment for plaintiff, and the defendant appeals. Judgment annulled, plaintiff's demands rejected, and suit dismissed at his cost.

Barksdale & Barksdale, of Ruston, for appellant.

John H. Mathews, of Alexandria, and John J. Peters, Jr., of Winnfield, for appellee.

MONROE, C. J. The pleadings in this case and judgment appealed from are correctly summarized by plaintiffs' counsel, in the brief filed by him, as follows:

### Statement of the Case.

"In substance, plaintiff alleges that he is the owner of 77 acres of land situated in Winn parish; that of this tract, * * * a portion is a cultivable field comprising about 35 acres; that this field has a natural gradual slope towards a creek that runs along the edge and side; * * * that the Chicago, Rock Island & Pacific Railway Company acquired a strip of land 100 feet wide running through this field as a right of way for its road bed; that plaintiff has a field above and below this right of way, and the rain water that falls in this portion of plaintiff's field would flow and drain over the said creek and away; that defendant company built and continuously maintains borrow pits on each side of the embankment on which the track is laid; that there are no culverts or drains through said embankment, and the embankment continually interferes with and prevents the natural drainage of plaintiff's field, prevents the natural flow of the rain water falling from above, and on plaintiff's field above the said right of way from passing over said right of way and on away to said creek, and dams the water at this embankment until the water is held on said field making a pond over a great area of the field after rains, which stands for some time; that water accumulates

and stands in the pits and trenches on the lower side, and seeps into plaintiff's field, rendering the land wet and marshy; that this state of things has been continuous; and plaintiff has been damaged thereby in that 26 acres of land have been impaired in value to the extent of $10 per acre; and that he has suffered loss in the impairment of crops of $10 per acre for these 26 acres, yearly.

"Plaintiff's demand is that defendant company, by judicial decree, be ordered to open up drains or culverts through the embankment on its right of way, running through plaintiff's field, sufficient to carry away the water from above; and drain the water from the pits and trenches on the lower side so that the field and crops will not be injured. And for judgment against defendant for the damages already caused in the sum of $2,860."

The defense is a general denial, and a plea of prescription of one and two years.

The judgment below is in favor of plaintiff, giving him judgment for $250, with interest.

As will be seen from the foregoing, the judge a quo ignores the prayer that defendant be ordered to "open up drains and culverts," and he does not appear to have ruled on defendant's pleas of prescription. Whether his award of $250 was intended as compensation for impairment of the value of the land, or for loss or impairment of the value of crops, and, if so, what crops, we have no means of knowing. And plaintiff does not ask that the judgment be amended.

Nine witnesses, including plaintiff, were called and testified in his behalf. Most of them have lived near the land in question for many years, and testify, from actual observation, that a portion of it is rendered insusceptible of profitable cultivation, and an additional portion, partially so by imperfect drainage.

According to plaintiff's view, the tract so affected is a field of about 30 acres, which is crossed by defendant's railroad, running east and west, on a line about two-thirds of the distance from its northern to its southern boundary, thus dividing the field into an upper field, containing about 20 acres, and a

lower field in which there should be (but are not) left 10 acres. The slope of the upper field, he says, is from north to south (approximately), terminating at about the line of the railroad where it meets the slope of the lower field coming down from the bank of a stream (called a "branch," for one part, and a "creek," for another; the idea that we get from the language of the witness being that the natural drainage of the upper field, aided by ditches, flowed from north to south, and that, upon meeting the slope (from south to north) of the lower field, was carried through that slope into the creek, by deepening the ditches through the bank of the creek. The witness went on the stand with a crude sketch, already prepared, and gave most of his testimony with reference to it; but, according to the sketch, the creek bounds the east, and not the south, side of the field, and the ditch runs, as does the railroad, from west to east; the railroad does not cross the ditches, and if they are choked it would seem to be because plaintiff has neglected to clean them out.

Mr. T. T. Dean, brother of plaintiff, gives the following, with other testimony:

"Did the water stand on the land before the railroad was built? A. Not on the field; no, sir; it would have stayed on it if it hadn't been for the ditches there. Q. Those ditches let out all the water? A. Yes, sir; in the same creek that the trestle is now on; down towards the trestle."

Asked why the crops made there since the building of the railroad have not been as good as before, he replied:

"I couldn't say about that. The land would not correspond like it used to be when it was in a state of cultivation. I know it used to make a good crop, but I couldn't tell you exactly how much. Some of it don't make anything where it used to make good stuff."

Asked whether the creek overflowed the land before the railroad was built, and whether it does now, he replied:

"No, sir; it does, since them bar [borrow] pits was made, cut out down there, two-thirds of it on the bank of the creek, and it didn't use to overflow at all."

No additional light is thrown upon the issues presented by the testimony of plaintiff's other witnesses, and none by that of defendants' witnesses, except its division engineer; the others, having visited the land on single occasions, and dry days in a dry season, between trains, possessing no qualifications in drainage matters, and testifying that they saw nothing wrong about the drainage. K. H. Hanger, defendants' division engineer, testified that he examined the property in question with reference to questions of drainage and damages, and reached the conclusion that "the alteration in the drainage by the construction of the railroad across it" had not damaged it; that in May, 1917, he made a map showing the contour of the land adjacent to the right of way, and the location, size, and depth of the borrow pits; that they are practically continuous on each side; that he never examined the property after a heavy rain; that adequate provision is made for the drainage of even a larger area, according to all standards of engineering. On his cross-examination, he stated that he had no knowledge that the waters of the creek ran over and covered the land and stayed there and that it had not done so prior to the building of the road, and he then further testified, as follows:

"Q. If the waters from the creek came out over the place where the banks were dug down, or where you put these bar [borrow] pits, and these bar [borrow] pits come into the creek and where you cut the banks of the creek down and the creek overflows the land since that work was done; and if that be a fact and it is also a fact that it didn't do it before, then you would say that the drainage would be interfered with, wouldn't you? A. Well, it may have been in some way different, but I don't say that it would make the drainage inadequate. * * * Q. Do you know whether it is a fact or not that the water actually covers a good deal of that field, and stands there a good time? A. No; I don't."

## Opinion.

If the construction of defendants' railroad interfered with the natural drainage of plaintiff's land, and so continues, the claim for damages in so far as damages may have been inflicted by the original act of construction, or by the maintenance, from year to year, of the railroad, as constructed, is barred by the prescription of one year, running, not from the date of the original act, but, from the date of the damage resulting therefrom, within the year preceding the institution of the suit.

"Take an example [this court has said]: My neighbor willfully undermines the party wall between us without my knowledge, and a year afterwards it falls. Shall he escape by proving that he did the act which occasioned the damage more than a year previously? * * * It seems to the court to be quite clear that the article, C. C. 3502 [now included in article 3536], should be construed in such cases as it reads, and the prescription should be held to commence running from the time the damage was sustained." Mestier v. Opelousas R. Co., 16 La. Ann. 356.

In another case, a plantation had been illegally seized by attachment and so remained for several years, and it was held that the seizure was a quasi offense, the action for damages for which was prescribed in one year, but that the claim for the resulting damages, occasioned by the continuance of the seizure, was prescriptible in one year from the time the particular damage complained of was sustained.

"We think," said the court, "the prescription of one year should be maintained against the portions of the demand of the plaintiff, which arose one year before the institution of this suit. But, it is incumbent upon the party pleading prescription to show what portion of the damages proved occurred anterior to the year preceding the institution of the suit, or, in other words, to prove what part of the plaintiff's demand is prescribed." De Lizardi v. New Orleans Canal & Banking Co., 25 La. Ann. 416.

See, also, Werges v. Railroad Co., 35 La. Ann. 641; Jones v. Texas & P. R. Co., 125 La

544, 51 South. 582, 136 Am. St. Rep. 339; Rady v. Fire Ins. Patrol, 126 La. 274, 52 South. 491, 139 Am. St. Rep. 511; Fertilization Co. v. Hyde Park, 97 U. S. 659, 24 L. Ed. 1036.

In the instant case, it is shown that the year (1916) preceding the institution of this suit was a dry year, and, though plaintiff cultivated the land in question, and appears to have been dissatisfied with the result, he has not informed the court, in figures, what the result was, and he has not shown that it was affected by any overflow. On the other hand, we gather from the whole evidence that, save for the lack of water, neither the condition of the land as to productivity nor as to value underwent any change during the year; and we find nothing upon which the judgment in favor of plaintiff can properly be rested.

It is therefore ordered that the judgment appealed from be annulled, that the plaintiff's demands be rejected, and this suit dismissed at his cost.