O'NIELL, C. J., dissents on the ground that Longino had no interest in moving to dissolve the sequestration, and the facts justified the attachment of his property.

(119 So. 423)

No. 29457.

## B. ROSENBERG & SONS, Inc., v. WAGUESPACK.

### In re B. ROSENBERG & SONS, Inc.

Nov. 26, 1928.  Rehearing Denied Jan. 2, 1929.

Charles Rosen, of New Orleans, and Charles T. Wortham, of Donaldsonville, for applicant.

W. J. & H. W. Waguespack, of New Orleans, for defendant.

LAND, J.  Relator sold a bill of goods to Mrs. Emile Burch, a widow, who operated a store at Glendale, in the parish of St. John. There was due relator for the goods the sum of $298.07.

On May 8, 1921, Mrs. Burch sold her entire stock of merchandise, including the goods in question, to the defendant, Waguespack, without paying relator's account.  Neither the seller nor the purchaser complied with the formalities prescribed by section 4 of Act 114 of 1912, known as the Bulk Sales Law.

In April, 1923, relator instituted the present suit against defendant as purchaser of the stock of goods, to hold him personally liable to plaintiff and the other creditors of Mrs. Burch, the seller, as a receiver under section 6 of Act 114 of 1912.

Defendant interposed the plea of prescription of 1 year, on the ground that relator's action is ex delicto and not ex contractu.

Without passing upon the merits of the case, the lower court maintained the plea of prescription. We are asked to review the judgment of the Court of Appeal affirming the judgment of the lower court.

Relator alleges:

That he had obtained judgment against Mrs. Burch; that she is insolvent; and that defendant paid for the stock of merchandise not less than $5,000, a sum more than sufficient to pay all of the creditors of the vendor, Mrs. Burch.

Relator further alleges:

That the sale was made by Mrs. Burch to defendant, Waguespack, in bulk and out of the usual course of business.

That the vendor and purchaser did not make a true and faithful inventory showing the quantity, the cost price of the vendor, or the then market value of each article sold.

That the purchaser did not demand and receive from the vendor a written list of the names and addresses of the creditors of the vendor, with the amount of the indebtedness due and owing to each, and certified by the vendor under oath to be a full, accurate, and complete list of her creditors and of her indebtedness.

That the purchaser did not, at least 5 days before taking possession of the merchandise or paying therefor, or at any time, notify personally or by registered mail, or otherwise, every creditor (including petitioner whose name and address were stated in said list), and that petitioner had no knowledge of the proposed sale and of the price thereof.

That the purchaser did not preserve the inventory and sworn list of creditors for inspection by the creditors, including petitioner, for 45 days after the completion of the sale.

"That said sale was utterly *fraudulent and*

*absolutely null and void* against your petitioner and other creditors of said vendor."

"That said purchaser has become *a receiver* and is held *accountable* to the creditors of the vendor, including petitioner, for all the goods, wares and merchandise that have come into his possession *by virtue of said sale and transfer.*"

It is clear from the allegations contained in relator's petition that he bases his cause of action *upon fraud*, without which there could not be a cause of action against defendant, as the purchaser of the stock of merchandise, under sections 4 and 6 of Act 114 of 1912.

Section 4 of the act expressly declares: "That the sale, in bulk, out of the usual course of business, of a stock of goods, wares or merchandise, in whole or in part, by the seller or vendor, *shall be prima facie fraudulent and void as against the creditors of the vendor*, unless the vendor or transferor and purchaser or transferee shall, make a true and faithful inventory, showing the quantity and, so far as possible, with the exercise of reasonable diligence, the cost price to the vendor or the then market value of each article to be included in the sale; and unless the purchaser or transferee demand and receive from the vendor or transferor a written list of the names and addresses of the creditors of the vendor or transferor, with the amount of indebtedness due and owing to each and certified by the vendor or transferor, under oath, to be a full, accurate and complete list of his creditors and of his indebtedness; and unless the purchaser or transferee shall, at least five days before taking possession of such merchandise or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price thereof; and unless the purchaser or transferee shall preserve such inventory and sworn

list of creditors for inspection by the creditors, or any of them, for forty-five days after the completion of the sale."

It is provided in section 6 of Act 114 of 1912: "That purchaser or transferee who shall not conform to the provisions of Section 4 of this Act, shall, upon the application of any of the creditors of the vendor or transferor, become a receiver and be held accountable to such creditors for all the goods, wares or merchandise that have come into his possession by virtue of such sale or transfer."

Relator has based his cause of action squarely upon the provisions contained in sections 4 and 6 of Act 114 of 1912.

It is plain from the provisions of section 4 of the act that a sale of a stock of merchandise in bulk and out of the usual course of business is prima facie fraudulent and void, as against the creditors of the vendor, unless the various formalities required by this section are complied with as indicia of the good faith of the contracting parties.

A sale that is fraudulent and void under the act transfers no title to the purchaser.

No contractual obligation can arise from such sale in favor of the creditors of the vendor, as the sale is a nullity, and there is no privity of contract between the vendor and the purchaser and the creditors of the vendor.

The vendor's creditors therefore have no cause of action ex contractu, under sections 4 and 6 of the act, against the purchaser of the goods in bulk for the recovery of the unpaid purchase price due to them by the seller.

"Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties." R. C. C. art. 2293.

As the acts of the purchaser of the stock of merchandise in this case were unlawful because committed in violation of the provisions of section 4 of the act, no quasi contract resulted from such acts and no obligation arose from that source.

"Personal actions arise from quasi offences, when the ground of action is the injury done to another by one of those faults which are not considered as real crimes or offences." C. P. article 32.

To sell or buy a stock of goods, in violation of section 4 of the act, invalidates the sale instead of creating it. Omission on the part of the seller or purchaser to comply with the requirements of this section is clearly a fault or wrong, which carries with it not only the nullity of the sale as a fraudulent transaction, but also imposes upon the purchaser the penalty of personal liability, under section 6 of the act, for the goods coming into his possession by virtue of such sale or fraudulent act, to which the purchaser is a party.

In our opinion, the cause of action created by sections 4 and 6 of Act 114 of 1912 is one arising ex delicto, and is barred by the prescription of 1 year. R. C. C. art. 2315.

It is therefore ordered that the judgment rendered herein by the Court of Appeal for the parish of Orleans be affirmed, and that relator pay the costs of this proceeding.