## M. L. BATH CO., Limited, v. BOOTH–McLELLAND CHEVROLET CO.

### No. 4329.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

W. H. Wamsley, of Coushatta, for appellant.

Stephens & Stephens, of Coushatta, for appellee.

TALIAFERRO, J.

Plaintiff, a creditor of N. C. Dodson, who conducted a business in Coushatta, La., under the trade-name of "Dodson Motor Company," instituted this suit against defendant, Booth-McLelland Chevrolet Company, a copartnership, to recover its open account against said Dodson Motor Company, amounting to $131.84, the price of stationery sold and delivered in February, 1931.

The Dodson Motor Company, it is admitted, was engaged in the "garage business, * * * including the buying and selling of automobiles, parts and accessories, oil and gas and in the repair of automobiles in the same manner as ordinary garages."

On July 22, 1931, the Dodson Motor Company, by notarial recorded act of sale, sold and delivered to defendant the following described property, a part of its assets, viz.: "The Chevrolet tools, Chevrolet parts and Chevrolet sign now located in the old 'Ed Winkler' garage, * * * it being the intention to sell and buy all such Chevrolet parts and tools located in said building; also, one picture projecting machine and accounting supplies." The price of this sale was $615.10 cash.

The record does not disclose the fact, but it is fair to assume that defendant at this time took over the agency for the Chevrolet Company at Coushatta which had formerly been held by the Dodson Motor Company.

Plaintiff seeks to hold defendant responsible to it for the amount of the Dodson Motor Company's account on the ground and for the alleged reason that the purchase of said property by it (defendant) was a bulk sale and in violation in part of Act No. 270 of 1926, known as the "Bulk Sales Law." Before the sale was consummated, an effort was made by the parties to comply with Act No. 114 of 1912, the parties not being aware of the existence of the later statute.

Plaintiff prays for judgment against defendant, "as receiver of N. D. Dodson, deceased, formerly doing business under the trade-name of 'Dodson Motor Company.' "

Defendant denies that plaintiff is such a creditor of Dodson Motor Company as entitles it to participate in the price of the sale to it; that no part of the goods sold by plaintiff to Dodson Motor Company was included in the sale to it; that said "Bulk Sales Law" was not intended to embrace a business such as the Dodson Motor Company was engaged in; that defendant is not personally responsible to plaintiff to any extent, and, in the alternative, if any liability exists on its part, that such is limited to the amount that would be due under a distribution of the price of said sale among all of the creditors of Dodson Motor Company; that the total liabilities of said company amounted to $4,472.75.

The court below dismissed plaintiff's suit and rejected its demand. Appeal is prosecuted by it.

There is no element of fraud or bad faith on part of defendant in the case.

■ We conceive the real purpose of the statutes regulating and relating to bulk sales to be that of preventing the perpetration of fraud on creditors of the vendor in such sales and are not enacted for the purpose of afford-

354

ing any one a peg on which to hang actions against the vendee in such sales.

Section 1 of the 1926 act provides: "That the transfer in bulk * * * of any portion or the whole of a stock of merchandise, or merchandise and fixtures * * * or other goods or chattels of the business of the transferor shall be void as against the creditors of the transferor, unless made in conformity with the provisions of this Act."

Section 2 provides that the transferor and transferee shall, at least ten days before the completion of any such transfer or payment of any consideration therefor, (a) make a detailed inventory showing the quantity and cost price to transferor of each article to be included in the sale; (b) transferee shall demand and receive from transferor a sworn written statement of the names and addresses of all his creditors, with amount due to each, according to form prescribed in the act; (c) transferee shall notify personally or by registered mail every creditor of said transferor, whose name is on said list, of the proposed transfer, the terms and consideration thereof, and time set for closing deal, together with a copy of the said list of creditors furnished by the transferor.

Section 3 provides that, if said transferee shall pay the consideration of sale or any part of it to transferor, or to his order, or to any person for his use, without first complying with the requirements of section 2 of the act, and without seeing that the purchase money or other consideration of said transfer is applied to payment of the bona fide claims of the creditors of said transferor pro rata according to dignity of their several claims, as shown upon said verified list or statement, he "shall at the suit of any creditor, be held liable to all the creditors of the said transferor as receiver for the fair value of all the property so transferred to him." It is provided, however, in this section, that, if the transferor and his creditors do not agree to a schedule of distribution of the proceeds of said sale, etc., then the transferee shall, within ten days after consummation of sale, pay the consideration therefor, less expenses of transfer, into the registry of the district court, and the said court shall, upon a proceeding for that purpose, make distribution of said fund to and among the persons legally entitled thereto.

There are admissions in the record reading as follows:

"It is admitted that Act No. 270 of 1926, known as the "Bulk Sales Law," was not complied with in said sale, except in the following particulars shown by annexed documents, to-wit: Inventory and appraisement of articles sold; sworn list of creditors with amounts due to each, and addresses; notice to M. L. Bath Company, Ltd."

"That in giving the notice, as aforesaid, de-fendant failed to attach thereto a copy of the statement of creditors as provided by said act."

"That at the time of said sale the Dodson Motor Company owed various creditors the sum of $4472.75, none of which was privileged on the property transferred."

On June 23, 1931, defendant wrote the following letter to plaintiff:

"This is to notify you as a creditor of the Dodson Motor Company of Coushatta, Louisiana, that after the expiration of five days from the time you receive this notice, we will purchase from said Dodson Motor Company for the price and sum of $615.10, the Chevrolet parts, tools and sign he now has in his possession.

"The price to be paid for these parts is the same the Chevrolet Motor Company charges for the same parts. It is our understanding that the Dodson Motor Company will continue to operate, and we are buying only a portion of its entire stock."

And on June 26th plaintiff made following reply:

"Your letter of June 23, 1931 written on the stationery of Stephens & Stephens of Coushatta to the M. L. Bath Company has been passed along to us for reply.

"We note that it is the intention of the Booth-McLelland Chevrolet Company to purchase from the Dodson Motor Company merchandise, tools etc for the sum of $615.10.

"We have been requested to notify you of the account of $131.84 due the M. L. Bath Company by the Dodson Motor Company and to ask that the McLelland Chevrolet Company mail to us or the M. L. Bath Company the $131.84 out of the amount which it proposes to pay the Dodson Motor Company for the merchandise and other stuff involved in the sale. Otherwise the M. L. Bath Company is not willing to consent to the sale and states that it wishes to advise you that it will look both to the Dodson Motor Company and to the Booth-McLelland Chevrolet Company for its account that is of course provided the sale is completed without its account having been paid.

"We trust that we have made clear the position of the M. L. Bath Company in this matter."

In this letter plaintiff did not take exception to the absence of a copy of the list of creditors of Dodson Motor Company, which should have accompanied the notice sent to it by defendant, but did refuse to consent to the sale to defendant unless its account was paid in full from sale price.

The Act No. 270 of 1926 is not nearly so drastic as the previous one (No. 114 of 1912) on same subject-matter. By the latter act, failure to comply with its requirements in making a

bulk sale, the parties were presumed to have acted fraudulently and with intent to cheat creditors. Section 1 of the 1926 act declares that bulk sales not made pursuant to its provisions shall be void, but by section 3 gives any creditor of transferor the right to provoke a proceeding to hold the transferee liable as receiver of the property sought to be transferred. This law does not intimate that the transferee shall be held personally responsible to any creditor for the full amount of the creditor's account against the transferor. He may be held liable "for the fair value of all the property so transferred to him," to all creditors. In the case at bar, there is nothing to show what disposition was made of the $615 defendant paid Dodson Motor Company, beyond the recitals of the act of transfer. No creditor, besides plaintiff, has complained of the sale, so far as we are advised. If all other creditors have received their proportionate part of the price, then, we think, plaintiff would have the right to proceed against defendant to recover directly its proportionate part of the price; but it certainly has no action, under the circumstances, to hold defendant for all of its account.

█ Under this law it would have been defendant's duty to have deposited the price of the sale in the registry of the district court of Red River parish when learning that plaintiff refused to assent to the proposed sale. If that had been done, plaintiff would only have received its proportionate part of the price, taking into consideration the total indebtedness of the transferor. Under the terms of section 3 of this act, it was defendant's duty to see to it "that the purchase money * * * is applied to the payment of the bona fide claims of the creditors of the said transferor pro rata according to the dignity of their several claims," etc., if all creditors had agreed to the proposed transfer. So, as stated above, nowhere in this act is there a suggestion or intimation that under any circumstances, unless the sale price is sufficient to pay all creditors, can the transferee be held for the entirety of any creditor's account.

██ The remedy of all the creditors, or of one or more creditor for the benefit of all, is one to require the purchaser to account for the goods acquired by him at a fair value thereof. The statute does not contemplate or provide a direct action on part of any creditor against the transferee to hold him personally liable for any account.

The Supreme Court, in construing the act of 1912, held that, where a bulk sale was made in violation of its provisions, no contractual obligation arose in favor of the vendor's creditors, nor was there any privity of contract between vendor and purchaser and creditors of vendor, and hence vendor's creditors have no action ex contractu against purchaser for recovery of unpaid purchase price due by seller; and further held that no quasi contract arose from such transaction. B. Rosenberg & Sons, Inc., v. Waguespack, 167 La. 451, 119 So. 423.

The 1926 statute has been construed twice by the Court of Appeal, First Circuit. The first case is that of General Tire & Rubber Co. v. Bullock et al., 14 La. App. 522, 130 So. 136, 137. In that case the court said: "The only right of action plaintiff can have against these two defendants is to have them account for the value of the goods transferred to them under the provisions of the Bulk Sales Law, subject, however to any defenses to which defendants may be entitled." Citing Devoe & Raynolds Co. v. Jones Pharmacy, 5 La. App. 149; Armour & Co., Ltd., v. Wise & McCalpin et al., 1 La. App. 202.

The other case is that of Manchester Silver Co. v. Clara Jewelry Co., Inc., reported in 138 So. 467. The syllabus in that case, which follows the language of the opinion, reads:

"Remedy of transferor's creditor against transferee failing to comply with bulk sales statute was to have transferee account for goods transferred, subject to transferee's valid defenses."

"Transferor's creditor could not sue transferee not complying with bulk sales statute for personal judgment."

Therefore, one who purchases merchandise or other chattels in bulk from another, without complying with the provisions of the 1926 act, even when such law is applicable, incurs no liability other than of being required to account for the fair value of same to all the creditors of the transferor, subject to any valid defenses the transferee may have.

For the reason herein assigned, the judgment appealed from is affirmed.