## BROWN SHOE CO. v. UNTER et al.
### No. 5428.

Court of Appeal of Louisiana,
Second Circuit.

April 1, 1937.

Arthur C. Watson, of Natchitoches, for appellant.

Rusca & Cunningham and W. Peyton Cunningham, all of Natchitoches, for appellees.

TALIAFERRO, Judge.

Plaintiff seeks to hold responsible, and to procure judgment against defendants, the officers and directors of Chas. Unter & Son, Inc., for the price of merchandise sold and delivered to the corporation upon the faith of allegedly false written statements, knowingly made by said officers and directors to plaintiff, of the financial condition of said company. A plea of prescription of one year was sustained, and this appeal presents the issue tendered by that plea. The original and amended petitions, with attached exhibits, disclose this state of facts:

That in the autumn of 1934 Chas. Unter & Son, Inc., enjoyed credit rating with plaintiff, and was due it in December of that year a balance on account; that on or about December 31st, plaintiff sent to that company a form used by its credit department to secure from its customers, present and prospective, data and information which would reflect their true financial condition, and which form, when truthfully filled out in detail, would enable plaintiff to determine whether or not credit, original or continued, should be extended; that this form, at plaintiff's request, was filled out fully by Joseph L. Unter, in the capacity of president of his company, on January 15, 1935, and mailed to plaintiff, and on the faith of the financial statement therein contained, and relying upon the truthfulness of the statement, plaintiff thereafter extended credit to said company and sold and delivered to it goods and merchandise for several hundred dollars; that said amount was due and owing on or about April 10, 1935, when the debtor company was forced into involuntary bankruptcy; that said financial statement disclosed the value of the debtor company's assets to be $25,441.41 with liabilities of only $7,772.46; that on May 14, 1935, a meeting of the debtor's creditors was held by the referee in bankruptcy, whereat defendants herein appeared and, together with books and records of their company, were duly examined, and from said examinations it was definitely disclosed that said financial statement was grossly incorrect and untrue; that it was clearly disclosed from said examinations that on the date of said financial statement and thereafter, Chas. Unter & Son, Inc., was insolvent, the value of its assets being very much less than the total of its liabilities. Details of fact touching said assets and liabilities are set out. It is further alleged that after the meeting of creditors, the bankrupt, in composition of its liabilities, offered to creditors 20 per cent. of their claims against it, which offer was finally accepted by vote of a majority of said creditors, and the bankrupt discharged; that plaintiff did not vote to accept said offer, and did not voluntarily accept twenty per cent. of its account, but was forced to do so by action of the majority of creditors.

Plaintiff affirmatively alleges that if said statement had disclosed the true financial condition of Chas. Unter & Son, Inc., as of its date, no credit thereafter would have been extended to it; that the ultimate result of extending credit on the faith of said incorrect and fraudulent statement and the discharge of that company from its liabilities, is that 80 per cent. of plaintiff's account remains unpaid and will be a total loss unless defendants are forced to pay it. This suit, for said balance, was filed March 21, 1936.

There is an admission in the record that the first knowledge plaintiff had that the

financial statement of date January 15, 1935, was not true, was derived from the contents of a letter written by the counsel of Chas. Unter & Son, Inc., to plaintiff, of date March 23, 1935. As plaintiff is domiciled in New York City, this letter reached it a few days thereafter.

Defendants contend that the current of prescription began when plaintiff delivered goods on the faith of the financial statement furnished it by defendants, while it is plaintiff's position that the genesis of the prescriptive period was not earlier than the receipt of the above-mentioned letter. In other words, that the current of prescription was suspended so long as plaintiff was without knowledge of the falsity and fraudulent character of the financial statement and the deceit of which it was the victim. If this contention is correct, the action is not barred, since suit was filed a few days before expiration of the year following receipt of the counsel's letter to plaintiff.

An exception of no cause and no right of action was filed by defendant, A. J. Courreges. It was overruled below and is not urged here. Presumably, it has been abandoned. We think it without merit.

■ There is no dispute about this action being one in tort or ex delicto. Many decisions could be cited that sustain this fact. Actions to recover damages resulting from torts are, as a rule, barred by the prescription of one year. Civil Code, arts. 2315, 3536. The latter article declares that—

"The following actions are also prescribed by one year:

"That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses."

And article 3537 of the Civil Code reads:

"The prescription mentioned in the preceding article runs:

"With respect to the merchandise injured or not delivered, from the day of the arrival of the vessel, or that on which she ought to have arrived.

"And in the other cases from that on which the injurious words, disturbance or damage were sustained.

"And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof. (As amended, Acts 1902, No. 33.)"

■ It is also the general rule that prescription runs against all persons and against all causes of action, save those specifically excepted or excluded by law; and it is urged by defendants that since the damage, if any was sustained by plaintiff, arose when it shipped goods on the faith of the financial statement, that article 3537 is fittingly applicable. While it is true that this article says that prescription thereunder, in all cases excepting those specifically excluded, shall begin to run when the "damage is sustained," yet, we think, under the most recent and best-considered decisions of the Supreme Court, where a cause of action, sounding in damages, is based upon fraud and deception practiced by the defendant, that the current of prescription is suspended until the injured person is impressed with knowledge of such fraud and deception. Fraud should never be allowed to triumph if such result may be reasonably and equitably avoided. The case of Reardon v. Dickinson et al., 156 La. 556, 100 So. 715, 717, reviews some of the jurisprudence anent this question. The opinion in that case discloses that plaintiffs, by fraudulent misrepresentations on part of defendants' agent, were induced to subscribe and pay for capital stock in the North Louisiana Drilling Company, which was represented to be worth its par value, but which, in fact, at the time of issuance, was worthless. Defendants were the promoters and organizers of the corporation. The date the stock was paid for does not appear from the opinion. Its worthless character and the fraud practiced on plaintiffs were discovered by them in May, 1920. Suit to recover the price of the stock was instituted within one year after that date but more than a year after acquisition of the stock. The court, in affirming the judgment of the lower court overruling a plea of prescription, said: "The plea of prescription is manifestly untenable under the facts of this case. The petition alleges and the evidence establishes that the plaintiffs did not discover that a fraud had been practiced on them until May, 1920, and the suit was filed in less than a year thereafter. As a matter of fact, while the false representations were made and the stock was issued to the plaintiffs more than a year before the suit was filed, the actual loss and damage only occurred within the year preceding the filing of the suit."

While the court does not expressly say that the damage was sustained when plaintiffs became aware of the fraud and deceit

of which they had been made the victims, a strong inference to that effect arises from what is said. The case of Mestier v. New Orleans, O. & G. W. Railroad Co. et al., 16 La.Ann. 354, is quoted from, and the following apt illustration therein of the justice of the rule announced is reproduced, viz.: "A man secretly saws nearly asunder the beams of a bridge: a year and a day afterwards, a traveler is maimed by the falling of the bridge from that cause. Shall the wrong-doer escape by pleading the prescription of one year; and does the stranger lose his action the moment it has occurred?" The questions therein propounded were correctly answered in the negative.

We think the later case of Bernstein v. Commercial National Bank et al., 161 La. 38, 108 So. 117, 126, controlling of the question discussed. Plaintiff was slandered by the contents of a letter written by defendants to the Comptroller of the Treasury at Washington, on December 16, 1920. The existence and nature of the contents of the letter were unknown to and concealed from plaintiff by defendants, directors and officers in the bank, until February 22, 1922. In the suit filed thereafter to recover damages because of the slander, plaintiff was met with a plea of prescription of one year provided by article 3536 of the Civil Code. In overruling this plea, the court said:

"The law provides that demands for damages for injurious words, whether verbal or written, are prescribed in one year. Civil Code, art. 3536. The law also provides that this prescription begins to run from the date the damage, or injury, caused by the words, was sustained. Civil Code, art. 3537. Here the injury or damage was sustained when the letter was delivered to the Comptroller. Hence plaintiff's demand for damages for the libel is prescribed, unless prescription has been suspended.

"In our opinion, prescription was suspended by the fraud and deception practiced on plaintiff in delivering the letter. The purpose of this deception was to conceal from him that such a letter had been written and delivered, and its effect was to conceal from him his cause of action. The act by which the concealment was accomplished was, in its very nature, as effective as if the concealment had been accomplished by other acts done from day to day. Under these circumstances we think the course of prescription was suspended until the fraud was discovered. See Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598."

Justice Overton makes it clear that the damage was sustained by plaintiff when the slanderous letter was delivered to the Comptroller, but squarely holds that as fraud and deception were practiced to prevent its contents from reaching plaintiff, the current of prescription, in the interim, was in suspense.

The case of Hyman v. Hibernia Bank & Trust Co., cited in the opinion, supports the doctrine therein announced. The opinion in the Hyman Case reviews a large field of cases pertinent thereto. The doctrine of "contra non valentum," etc., is copiously discussed. The burden of that opinion and of the cases cited and quoted from clearly sustains the holdings of the court in the Reardon and Bernstein cases.

Equity forms the basis and is the controlling principle in cases where persons seek relief from errors committed because of fraud or deceit practiced upon them. Courts will extend all rules to the breaking point to uncover such practices and restore to the victim that of which he has been unjustly deprived through misplaced confidence in and reliance upon false and fraudulent misrepresentations which have induced him to act to his detriment.

The erstwhile celebrated case of Board of Levee Commissioners of Tensas Basin Levee District v. Tensas Delta Land Co., Ltd., reported in (C.C.A.) 204 F. at pages 736, 737, 747, furnishes interesting reading on the subject of fraud practiced in connection with a sale of real estate. There the defendant sought to foreclose inquiry into the details of the negotiations and transactions culminating in the sale by interposing a plea of prescription of one year. We quote one section of the syllabus which tersely reflects the court's holding therein: "In suits in equity, where relief is sought on the ground of fraud, and the party injured remained in ignorance of the fraud without fault or want of diligence on his part, limitation does not begin to run until the fraud is discovered, although there are no special circumstances, and no effort on the part of the party committing the fraud to conceal it."

Judge Shelby, the organ of the court, in passing on a question of pleading, made this significant statement: "Where it is possible to avoid it, the court should never

allow justice to be defeated and wrong to triumph by a mere mistake or unskillfulness in pleading."

 It is a rule too well known to cite authority to support it, that fraud viciates all contracts and dealings between men, and the beneficiaries thereof should not be allowed to escape with their ill-gotten gains if the strong arm of the courts can prevent it.

Defendant cites and relies upon the following cases to sustain the plea of prescription: (1) Miquell G. de Lizardi v. New Orleans Canal & Banking Co., 25 La.Ann. 414; (2) Burch v. Willis, 21 La.Ann. 492; (3) Millspaugh v. New Orleans, 20 La. Ann. 323; (4) Reynolds v. Reiss et al., 145 La. 155, 81 So. 884; (5) Martin v. Texas Co., 150 La. 556, 90 So. 922; (6) Rosenberg & Sons v. Waguespack, 167 La. 451, 119 So. 423; (7) Knoop, Hanneman & Co. v. Blaffer, 39 La.Ann. 23, 6 So. 9; (8) Gardiner v. Succession of Scherer, 31 La. Ann. 527.

The first five of these cases were ordinary tort actions. There was no element of fraud, deception, or misrepresentation present in either.

It was held in the Rosenberg Case that damages to a creditor resulting from bulk sale of merchandise out of due course of business, in violation of Act No. 114 of 1912, were prescribed in one year from the date of the sale. That case is easily distinguished from the Reardon and Bernstein Cases. There was no concealment of the facts of the sale, so far as the opinion discloses, and the fraud involved is so characterized by special statute. Without the statute, a bulk sale, consummated in a manner not in keeping with its provisions, would not necessarily be tainted with fraud.

The Knoop, Hanneman & Co. Case tends to support the plea, and, if so, is impliedly overruled by the Reardon and Bernstein Cases, later in date.

In the Gardiner Case, a simulated sale of land was involved. A reading of that case will clearly prove its lack of pertinency to the facts of the present case.

There is no intimation that plaintiff, by the exercise of ordinary diligence, could have learned of the falsity of the financial statement acted on by it to its injury before it did so. The crash in the debtor's affairs came within three months after the statement was delivered, and the account sued on shows that goods were sold and delivered to Chas. Unter & Son, Inc., as late as February 9th.

We are of the opinion that the judgment sustaining the plea of prescription is erroneous; and for the reasons assigned, it is reversed and set aside and this cause is hereby remanded for further proceedings. In other respects said judgment is affirmed. Costs of appeal are assessed against appellees; all other costs to await final determination of the case.