**CHELSEA SALES CORPORATION v. A. JACOBS CO., Inc.**

**No. 2069.**

Court of Appeal of Louisiana. First Circuit.

Jan. 30, 1940.

OTT, Judge.

On June 23, 1938, the plaintiff company secured a judgment against A. Jacobs Co., Inc. for the sum of $283.46, interest and cost, and a writ of execution issued on the judgment and was returned nulla bona. This suit was filed in October, 1938, against the Jacobs Company, Walter A. Baccarat, its president, and Jules J. Keller, its secretary-treasurer; Curry Ford, Warren Foster, Ford Stewart, Louis Franklin, Isaac Temple, J. H. Anderson and Victor Ashy.

After the filing of certain exceptions by the defendants and the filing of two supplemental petitions by the plaintiff, the issues as then made up show the purpose of the suit is to hold the two officers of the corporation liable personally and in solido for the amount of the judgment, interest and cost, and to hold the other defendants liable for the value of merchandise and various articles of furniture and fixtures bought by them from the two officers of the defendant corporation out of the usual course of business and in violation of the Bulk Sales Law, Act No. 270 of 1926. One of the supplemental pleadings filed by plaintiff sets out the nature and value of the goods and fixtures purchased from these officers by these various transferees, and each one of these seven transferees is sought to be held·liable and accountable to plaintiff and the other creditors for the value of the goods and fixtures alleged to have been bought from the officers of the Jacobs Company out of the usual course of business.

All of the transferees, except Temple, admitted the purchase by them from the officers of the Jacobs Company of certain articles of merchandise or parts of the furniture and fixtures, and they further admit that no inventory or list of creditors was made as required by the Bulk Sales Law, but they allege that no compliance with said law was necessary as they made these purchases after said Jacobs Company had made a settlement with its creditors and had issued certified checks to every creditor, and each creditor had either been paid off or had accepted the compromise settlement. They denied that they.had made any purchase out of the usual course of business, but that the articles which they purchased were remnants after the business of the Jacobs Company was closed out and a settlement made by them with their creditors. The answer of the Jacobs Company

Kay & Kay, of DeRidder, for appellant.

J. R. Ferguson, of Leesville, for appellee.

and its two officers was practically to the same effect as those made by the transferees.

The Jacobs Company and its two officers further set up in their answer that prior to the sales made to these various transferees of the remnant stock and fixtures, the creditors of the company had been paid; that the attorneys for the plaintiff herein had notified them that the offer of the Jacobs Company for a settlement had been accepted, and a certified check for the amount due under the settlement had been issued and was in the possession of plaintiff and had not been returned; that they acted in good faith and in an effort to close out the business of the Jacobs Company and pay off the creditors and back salary due the two officers of the company.

The trial judge found that the defendants had not violated the Bulk Sales Law and were not liable under that law, but he further found that, if the defendants were liable under said law, there was no proof to show what proportion of the plaintiff's claim each of the purchasers of the stock and fixtures would be liable for based on the amount of their respective purchases. The suit was dismissed as to all defendants. An appeal was asked for by plaintiff, but the appeal was only allowed insofar as the judgment dismissed the suit as to Jacobs & Co., J. J. Keller, Walter Baccarat, Victor Ashy and Curry Ford, and was refused insofar as the judgment dismissed the suit as to the other defendants for the reason that the claims against them were less than $100 each.

Complaint is made in this court because of the refusal of the trial judge to include these other defendants in the order of appeal. However, as no action was taken by the plaintiff to compel the trial judge to include in the order of appeal these other defendants as appellees, it is clear that the appeal is before us only as to these defendants named in the order of appeal.

The legal question presented on the appeal may be divided into two phases: (1) as to the liability of Ashy and Ford as purchasers of goods and fixtures out of the usual course of business to the extent of the fair value of such goods and fixtures; and (2) the liability of the Jacobs Company and its two officers, Baccarat and Keller, for the full amount of plaintiff's judgment.

In February, 1938, Ashy purchased from these two officers of the Jacobs Company the remnant stock of merchandise for a consideration of $275, and Ford purchased from them a few days later a safe, cash register and hat case for either $115 or $135. At the time these purchases were made, the principal part of the merchandise had been sold and the proceeds used in making a settlement with the creditors on the basis of 25 cents on the dollar. At that time it appears that all the creditors had accepted the settlement and had been paid off, except two or three creditors holding small claims, and their claims had been paid in full either in January or the early part of February, and before the sales here in question were made. In any event, the record shows that the only creditor who had not been paid at the time of these sales of the remnant stock and fixtures was the plaintiff (other than some back salary which these two officers claimed was due them).

The situation with reference to plaintiff's claim at the time of these sales was as follows: In September 1937, the Jacobs Company made a proposition to all of its creditors, including plaintiff, to settle on the basis of 25 cents on the dollar. On receiving a favorable reply from practically all of the creditors, the Jacobs Company sent out certified checks to the creditors to cover the settlement in October, 1937. The attorneys representing plaintiff at the time recommended the acceptance of the settlement, and the collecting agency handling the claim for plaintiff recommended to them on September 19, 1937, that the offer be accepted, provided the other creditors accepted. The check for the settlement was sent to the collecting agency by these local attorneys on October 29, 1937, recommending its acceptance.

The check was returned to the attorneys by the collecting agency on November 12th, with the advice that plaintiff would not accept it, but suggesting that the attorneys wait and see how two suits which had been filed against the Jacobs Company by two other creditors would turn out. The attorneys answered on November 15th, again recommending the acceptance of the settlement. During all this time the check was either in the possession of the collecting agency or the local attorneys, and the Jacobs Company was not advised of any refusal to accept the check. Nothing fur-

ther was done until April, 1938, when a suit was filed against the Jacobs Company through other attorneys into whose hands the account and check had been placed after withdrawing them from the first attorneys who had recommended the acceptance of the settlement. Not until the suit was filed in April, 1938, some two months after the remnant stock and fixtures had been sold, did the officers of the Jacobs Company know that plaintiff refused to accept the settlement. Nor did the plaintiff return this check until ordered to do so by the court in June, 1938, when a judgment was rendered in favor of plaintiff for the full amount of its claim.

Obviously, there was no actual or constructive fraud on the part of the officers of the Jacobs Company and those who purchased the remaining stock and fixtures after the business had been wound up, and as they thought, all creditors had been paid. We are in full accord with the following statement made by our brethren of the Second Circuit in the case of M. L. Bath Company, Ltd. v. Booth-McLelland Chevrolet Co., 142 So. 353: "We conceive the real purpose of the statutes regulating and relating to bulk sales to be that of preventing the perpetration of fraud on creditors of the vendor in such sales and are not enacted for the purpose of affording any one a peg on which to hang actions against the vendee in such sales."

Assuming that the sales made to Ashy and Ford were of such a nature as to constitute a violation of the Bulk Sales Law, Act No. 270 of 1926, we are of the opinion that the plaintiff is not in a position to invoke the provisions of the act against these purchasers for the reason that it held on to the check and did not advise the Jacobs Company that the check would not be accepted in settlement until the officers of the company and those who made the purchases from them had in good faith acted on the belief that all creditors were paid. We might add to what our brethren of the Second Circuit said relative to the purpose of the act that we do not think the act was intended to permit a creditor to lead a debtor into the belief that his offer of settlement had been accepted and retain the check sent to such creditor to cover the settlement, and then, after the debtor in good faith and in an effort to wind up his business has sold some of his assets, invoke a violation of the act to force an innocent purchaser to account for the price of the goods that he bought and paid for.

Moreover, plaintiff has not been injured by the failure to comply with Section 2 of Act No. 270 of 1926, providing for the making of an inventory of the property to be transferred and the list of the creditors and the mailing of the notice and list to the creditors before the transfer is completed. Had such an inventory been made and list of creditors demanded, there would have been no creditors to list and plaintiff would have received no notice or list as plaintiff was then not considered a creditor, and obviously would not have been listed as one. Plaintiff's own conduct created this situation and it cannot now take advantage of the failure to comply with a provision of the law which its own acts helped to bring about.

■■ There is no question of the liability of the Jacobs Company. Indeed, this company was condemned for plaintiff's claim in the judgment rendered on June 23, 1928, and no appeal was taken from that judgment. As to Baccarat and Keller, officers and shareholders in the corporation of Jacobs Company, Inc., it is not claimed that they were liable under Act No. 270 of 1926, but they are sought to be held liable under Section 27 of Act No. 250 of 1928, making directors of a corporation liable to creditors of the corporation where they permit the distribution and return of any assets of the corporation to shareholders not in the nature of lawful dividends.

Conceding that plaintiff has a right in this proceeding to hold these two officers liable under the law, although the pleadings hardly bring the case within the terms of that law, yet we fail to see where any individual liability has been incurred by them in selling the remaining stock and fixtures as they did. Ordinarily, an individual shareholder of a corporation cannot be held liable for any debt or liability of the corporation. Section 19 of Act No. 250 of 1928. Nor can a director or officer be held liable individually to a creditor of the corporation, except for acts of malfeasance or criminal wrongdoing. Allen et al. v. Cochran et al., 160 La. 425, 107 So. 292, 50 A.L.R. 459; Ellett et al. v. Newland et al., 171 La. 1019, 132 So. 761; Wirth v. Albert et al., 174 La. 373, 141 So. 1.

■ While it is true that these two officers did receive certain sums of money for

406

the sale of some of the goods and fixtures after the creditors were paid and also cashed and retained the check ordered to be returned to them when judgment was rendered against their company and in favor of the plaintiff, yet it is shown that these sums were applied by them on back salaries due them and in the payment of the expenses incident to closing out the business. There was no wrongdoing or malfeasance on their part such as to render them personally liable for plaintiff's judgment against the Jacobs Company, Inc.

Nor do we think that plaintiff has shown such careless and negligent conduct on the part of these two officers in the distribution of the assets of the corporation as to make them liable to a creditor under the cited case of Fudickar v. Inabnet et al., 176 La. 777, 146 So. 745. The assets of the corporation were used to pay its debts, including past-due salaries due them for services rendered the corporation.

For the reasons assigned, the judgment is affirmed at the cost of appellant.