NORRIS, Judge.
This is a suit by a seller for specific performance of an offer to purchase. The seller alternatively demanded damages for the alleged breach, or for forfeiture of $50,000 earnest money. The defendant purchaser, on the other hand, claimed it was the seller who had breached and should return double the earnest. The trial court found that the buyer had breached; it permitted the seller to retain the earnest. The buyer now appeals, urging first that the trial court erred in finding that the buyer rather than the seller committed the breach, and second that there was no consent to contract. For the reasons expressed, we affirm.
The subject of this litigation is three businesses that Mr. and Mrs. Loggins owned through their corporation, Loggins Ltd. These were Jungerke’s Furs on Mi-lam, Sarrah’s Dress Shop on Azalea, and Iceland Fur Storage on Wilkinson in Shreveport. Loggins listed the businesses with VR Business Brokers in the fall of 1983. One of VR’s clients on the other end was the defendant, Mrs. Van Weelden, who wanted to purchase an ongoing retail business. VR’s agent, Mr. Matousek, told her about the Loggins enterprises and took her on three or four tours of the facilities in early November. After she signed an offer to purchase for $400,000 on November 8, she was shown some balance sheets and profit-and-loss statements covering periods from February 1982 to June 1983. On November 14 she signed another offer, at the same price, and gave a deposit of $50,-000. The next day she conducted, with her accountant, a detailed abstract of the companies' account cards in an effort to verify their business potential. During the next two weeks, VR’s attorney, Mr. Settle, corresponded with the parties about the unresolved details of the agreement. They set a November 29 meeting date to discuss the problems and complete the contract.
The main accomplishment of the November 29 meeting was to reduce the price to $350,000. The principals then discussed several incidental matters. The two most troublesome areas were accounts payable and receivable and security for the credit portion of the purchase price. Mrs. Van Weelden admits she agreed to assume $43,-500 of Loggins’s accounts payable liabilities, and Loggins agreed to indemnify her and give her set off rights against the credit portion of the sales price for anything more. Mrs. Van Weelden later claimed that she had really wanted a Bulk Sales Act transfer and that the indemnity and set off provisions were inadequate for her protection. Mr. Settle also told her that Loggins wanted, as security for the credit portion of the purchase price, a chattel mortgage on all the furniture, fixtures and inventory and an assignment of accounts receivable. Mrs. Van Weelden testified she understood that the only security she would have to tender would be some bank stock to cover the credit portion of the purchase price and that it was not until later that Loggins requested her to grant a chattel mortgage and an assignment of accounts receivable. At the end of this meeting, the parties intended to complete the transaction. They executed an offer to purchase on November 30 and set December 2 as their closing date.
When Mrs. Van Weelden arrived for the closing, accompanied by her attorney and CPA, she announced that she was not going to sign. She claimed she had not yet reviewed the sheaf of sales documents with her attorney and wanted “to change a few things,” while admitting that she was still “open to consideration.” Mr. Settle admitted that all the documents were not complete but they nevertheless represented “90% of the meat and potatoes” of the November 29 meeting. He stood prepared to make any corrections or changes necessary. The parties set another closing for December 6, but this one fell through as well. Subsequent discussions were likewise fruitless. Loggins filed suit on December 13.
*1075 There was evidence, however, of a more compelling reason for Mrs. Van Weelden to recede from the agreement. According to Mr. Matousek, Mr. Settle and Mr. Loggins, the purchaser showed the offer and the sales documents to her banker. The banker told her the price was too high and she could not afford it. Mrs. Van Weelden herself admitted this. R.p. 194. The trial court specifically found that Mrs. Van Weelden’s withdrawal from the contract was based on her banker’s advice and not on the seller’s conduct. The trial court therefore ordered forfeiture of the earnest money to the seller and denied all other relief. LSA-C.C. art. 2463.
In her first specification of error, Mrs. Van Weelden has advanced four long arguments that describe every alleged act and omission, urging that these acts amounted to an active breach of the seller’s obligation, thus entitling the buyer to recede without penalty. These arguments are based on LSA-C.C. arts. 1931, 1933 (1870). What her brief does not address, however, is her own burden of proof in overturning a trial court’s factual finding. The standard is announced in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not disturb a factual finding in the absence of manifest error.
The evidence supports two theories of why Mrs. Van Weelden refused to close the sale:
(1) the seller breached the contract first; and
(2) the buyer decided the price was too high.
The thrust of Mrs. Van Weelden’s argument cannot be merely that the seller’s acts provided a more reasonable explanation for her conduct; she must prove that the trial court was manifestly erroneous in its conclusion as to which side breached the agreement. This she has not proved. There was testimony not only from the seller and his agents, but also from Mrs. Van Weelden herself, to support the trial court’s findings. Furthermore, it seems more reasonable to find that she backed out of the sale because of the price than because of some minor differences about security devices.
One issue Mrs. Van Weelden particularly contests is the Bulk Sales Act provision. Mr. Settle, the attorney who handled the sale, testified that the indemnity agreement gives the purchaser as much protection as a Bulk Sales transfer. The trial court agreed. Furthermore, the record suggests a finding that Mrs. Van Weelden herself agreed, at the November 29 meeting, to indemnification and set off in lieu of compliance with the Bulk Sales Law. R.p. 71. The underlying purpose of the Bulk Sales Law is to protect creditors from fraudulent transfers. LSA-R.S. 9:2961, 2964; M.L. Bath Co. v. Booth-McLelland Chevrolet Co., 142 So. 353 (La.App. 2d Cir.1932). Under the proposed agreement here, the seller agreed to indemnify the buyer for any debts in excess of the assumed $43,500 and also granted the buyer the right to set off any debts she was forced to pay in excess of that amount against the balance of the purchase price. And the parties are certainly not exposed to criminal liability for opting out of the Bulk Sales Law. Thus we cannot see how Mrs. Van Weelden is any the worse off under the indemnity agreement than under a Bulk Sales transfer.
The issue of the security arrangement shores up another of the trial court’s factual conclusions. Mr. Loggins testified by deposition of December 29, 1983 that he agreed to proceed with the sale accepting the bank stock as the only security. On the same date, Mrs. Van Weelden stated by deposition that she refused to go forward. This supports the trial court’s finding that Mrs. Van Weelden committed the breach for financial reasons and refutes her argument that it was otherwise.
Equally meritless is her argument that the request for a chattel mortgage and an assignment of . accounts receivable was the seller’s breach. It strains this court’s credulity for Mrs. Van Weelden to argue that she expected the seller to finance a $300,-000 purchase balance without adequate se *1076 curity, or with a pledge of bank stock worth only about $100,000.
 Even assuming, without so holding, that the alleged acts amounted to a breach, we would not hold them sufficient to justify Mrs. Van Weelden in receding from the contract. Security devices are accessory obligations. LSA-C.C. art. 1913 (1984). Failure of an accessory obligation does not defeat the principal one. Cf. LSA-C.C. arts. 3137, 3285.
These arguments do not meet the burden of proving manifest error in the trial court’s findings and conclusion. Thus they do not justify reversal.
In her second specification of error, Mrs. Van Weelden claims the trial court erred in finding that both parties consented to the agreement. VR’s offer form represented only a part of the total agreement; without the whole, she argues, consent to contract cannot be inferred.
In matters of contractual consent, we are guided by LSA-C.C. art. 1927 (1984), which provides that “[a] contract is formed by the consent of the parties established through offer and acceptance.” Here there was a series of three offers by the purchaser. In between, there were long negotiations and extensive research by the prospective purchaser. The final offer, on which the parties concurred, was accepted after a special meeting in which most of the details of the transaction were settled. The trial court did not err in concluding that the process of offer and acceptance, preceded by the long negotiations, proved the consent of both parties.
The parties’ conduct away from the bargaining table also belies any lack of consent. Before the failed closing, Mrs. Van Weelden bought a half-page ad in the Shreveport Times, put up deposits for utilities at the new stores, transferred a contract with the phone company, and made arrangements for store security. Mr. Log-gins, for his part, terminated his lease of the Azalea Street store. None of these acts are consistent with Mrs. Van Weel-den’s claim of lack of consent.
She has also cited a number of cases in support. These cases are inapposite. For example, in Sanders Camper Village v. Coleman Oldsmobile, 418 So.2d 679 (La.App. 1st Cir.1982), writ denied 422 So.2d 163 (La.1983) and Westside Funeral Home v. Nicholas, 425 So.2d 837 (La.App. 5th Cir.1983), the decisions seem to have hinged on error as to the nature of the contract rather than failed consent. LSA-C.C. art. 1950 (1984). Such is not the case here. In Alexis v. Pacaccio, 410 So.2d 867 (La.App. 4th Cir.1982), there was no written contract at all; consequently, there was no proof of consent. This is manifestly inapplicable to the instant case.
We therefore conclude the trial court did not err in its finding of consent. The contract was valid and Mrs. Van Weelden’s withdrawal from it caused the forfeiture of her earnest money. The judgment is affirmed at her cost.
AFFIRMED.