No. 24,875.

C. B. NORTON JEWELRY COMPANY, *Appellant,* v. J. M. MADDOCK
et al., *Appellees.*

### SYLLABUS BY THE COURT.

BULK-SALES ACT—*Chattel Mortgage on Stock of Merchandise—A Disposal of Property in Violation of Bulk-sales Act.* A pledge of a part of a stock of merchandise by a merchant to one of his creditors to secure the payment of a debt owed by the merchant to the creditor is a disposal of the 'goods pledged within the meaning of the bulk-sales law, sections 4894-4897 of the General Statutes of 1915.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed January 12, 1924. Affirmed.

*Charles Hughes,* of Manhattan, and *Samuel Feller,* of Kansas City, Mo., for the appellant.

*Alvin R. Springer, Walter Reed Gage, R. P. Evans,* and *George Clammer,* all of Manhattan, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action, in replevin, to recover the possession of certain jewelry. Judgment was rendered in favor of B. W. Smith, trustee in bankruptcy, intervenor; and the plaintiff appeals.

A jury was waived, and the cause was tried by the court on an agreed statement of facts, as follows:

"1. That plaintiff is a corporation organized and existing under the laws of the State of Missouri, and that its principal place of business is 1016 Walnut Street, Kansas City, Missouri.

"2. That at all times between the 14th day of January, 1918, and the 4th day of February, 1922, upon which date he was adjudged a bankrupt, defendant, J. M. Maddock, was a merchant in the city of Manhattan, Riley County, Kansas, and as such engaged in conducting a retail jewelry store in said city.

"3. That on the 14th day of January, 1918, the defendant, J. M. Maddock and his wife executed and delivered to C. N. Sheldon the promissory note set out as 'Exhibit A' in the intervening petition of C. M. Sheldon, which note was secured by a chattel mortgage on the store, furniture and fixtures of the defendant Maddock, for the purchase price money. That C. M. Sheldon has in the month of March, 1922, taken the mortgaged property in full payment of his debt.

"4. That on or about the 4th day of February, 1921, defendant Maddock was indebted to the plaintiff in the sum of seventeen hundred and three dollars and twenty cents ($1,703.20) and was indebted to other creditors for eight

Jewelry Co. v. Maddock.

thousand three hundred seventy-three dollars and twenty cents ($8,373.20) which is still due and unpaid. That upon said date a representative of plaintiff demanded and received of defendant Maddock a number of diamonds and settings therefor as more particularly appears in the receipt which plaintiff thereupon executed and delivered to the defendant Maddock, which receipt it set out as 'Exhibit B' of C. M. Sheldon, petitioner in intervention herein. That the diamonds taken from the stock and store of J. M. Maddock were not taken by a sale in the ordinary course of business but that they were taken as a pledge to secure the indebtedness then due and owing the C. B. Norton Jewelry Company from J. M. Maddock. That the diamonds so taken by C. B. Norton Jewelry Company were valued at about seventeen hundred and seventy-five dollars ($1,775.00). That the stock of goods of J. M. Maddock was valued at that time at about ten thousand six hundred dollars ($10,600.00).

"5. That said diamonds, at the time they were so demanded and received by the representative of the plaintiff, were a part of the stock of diamonds and jewelry of defendant Maddock, and were then and theretofore kept by him as a part of his stock of merchandise in his place of business in Manhattan, Kansas: That prior to so receiving said diamonds, the plaintiff had no lien whatever upon the same. That said diamonds were thereupon taken by its representative to the store of the plaintiff in Kansas City, and there retained for a short time, and then by the plaintiff, billed to defendant Maddock at Manhattan, upon a bill, a copy of which is attached to plaintiff's petition, marked 'Exhibit B' of said petition.

"6. 'Exhibit A' of the petition is a true copy of the receipt delivered by the plaintiff at the time said diamonds were by defendant Maddock, delivered to plaintiff; that the said diamonds and settings thereof, after being taken to Kansas City and rebilled to defendant Maddock, were again placed by him in his stock of merchandise and offered for sale in all respects as the remainder of his stock of merchandise. That neither the receipt nor the bill was filed or placed of record in any manner with the register of deeds of Riley County, Kansas; that the said plaintiff did not, at any time, demand of defendant Maddock a list of the names and addresses of his creditors certified under oath to be complete and accurate, and that said C. B. Norton Jewelry Company did not at any time notify, either in person or by registered mail, every or any creditor of said Maddock of the proposed pledge of said merchandise, or of the transaction hereinbefore described. That no attempt whatsoever was made either by the C. B. Norton Jewelry Company or said Maddock to comply with the statutes of Kansas known as the 'Bulk-sales Law,' being sections 4894, 4895, 4896 of the General Statutes of Kansas of 1915.

"7. That the diamonds and settings of same which were seized by the sheriff of Riley county, Kansas, under the writ of replevin herein are part of the diamonds so taken by plaintiff out of defendant Maddock's stock of merchandise, as evidenced by Exhibit 'A' of the petition. That about seven hundred eighty-five dollars ($785.00) worth of the diamonds mentioned in Exhibit 'A' of the petition, were not seized under the writ of replevin.

"8. That the diamonds seized by the sheriff of Riley County, Kansas, were delivered to the plaintiff by the sheriff on August 12th, 1921, and plaintiff has retained possession of the same ever since said date.

"9. That on or about January 30th, 1922, an involuntary petition in bankruptcy was filed against J. M. Maddock, and upon the 4th day of February, 1922, J. M. Maddock was adjudged a bankrupt by the United States District Court, and thereafter B. W. Smith, of Manhattan, Kansas, was duly elected trustee of J. M. Maddock, bankrupt, and he is now the duly elected, qualified and acting trustee in bankruptcy of said bankrupt estate and as such has entered his appearance herein and is defending this action for the benefit of the creditors of said estate."

Several propositions are argued by the plaintiff. It is necessary to discuss but one of them, and that is: Did the plaintiff acquire the right of possession of the property notwithstanding section 4894 of the General Statutes of 1915. That section reads:

"The sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto, otherwise than in the ordinary course of his trade or business, shall be void as against the creditors of the seller, unless the purchaser receives from the seller a list of names and addresses of the creditors of the seller certified by the seller under oath to be a complete and accurate list of his creditors and unless the purchaser shall, at least seven days before taking possession of the property, or before paying therefor, notify in person or by registered mail, every creditor whose name and address is stated in said list, or of whom he has knowledge, of the proposed sale."

A closely kindred question was determined in *Bank v. Davis*, 103 Kan. 672, 175 Pac. 972, where this court said:

"So far it has been assumed that the bulk-sales law applies to the transaction involved. A doubt on this question arises from evidence that the bill of sale referred to was given as security, and from the circumstance that at the time of its execution the buyer agreed in writing to reconvey the property upon the repayment of the purchase price within a fixed time. If, however, the bill of sale is deemed to have been in legal contemplation a chattel mortgage, we still regard it as constituting a 'sale or disposal' of the stock within the meaning of the statute. If the owner of a stock of merchandise, while allowed to sell it only upon notice to his creditors, could mortgage it effectively without such notice, the evasion of the statute would be so easy as to deprive it of all practical force. In this state the title to chattels passes by the execution of a mortgage (Gen. Stat. 1915, § 6501), which therefore amounts to a sale, or at least to a disposal." (p. 674.)

The following language is found in 27 C. J. 883:

"It has been almost uniformly held that a chattel mortgage of goods in bulk which operates only to secure a lien, the title remaining in the mortgagor, is not a sale, transfer, exchange, or assignment within the meaning of those terms as used in the bulk-sales statutes, except where used as a mere device to effect what is in fact a sale or transfer in evasion of the statute."

The purpose of our statute is to prevent a person engaged in merchandising from disposing of any part of his stock, otherwise

than in the ordinary course of his business, to the disadvantage of any of his creditors. As was held in *Bank v. Davis,* supra, giving a mortgage on a stock of goods is a "disposal" thereof. Such a transaction is out of the ordinary course of trade or business. Pledging a part of a stock of goods is likewise a disposal of those goods out of the ordinary course of trade or business. It is a complete disposition of the goods so far as the creditors of a merchant are concerned. It puts those goods beyond the reach of all creditors except those who may receive the benefit of the pledge until the pledgee's claim has been satisfied. So far as creditors are concerned, pledging all or a part of a stock of merchandise is as effective a disposition of the goods pledged as can be made by a sale thereof. To be valid, such a disposition must be made in conformity with the bulk-sales law of this state.

The judgment is affirmed.