FIRST NAT. BANK OF SHREVEPORT, LA., v. SHARP.

No. 6229.

Circuit Court of Appeals, Fifth Circuit.

Jan. 12, 1932.

H. C. Walker, Jr., and Leon O'Quin, both of Shreveport, La., for appellant.

T. Overfon Brooks and William H. Cook, both of Shreveport, La., for appellee.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

On a petition filed April 22, 1929, the Handy Andy Community Stores, of Louisiana, Inc., a Louisiana corporation domiciled at Shreveport, which operates six retail grocery stores, was on June 2, 1929 adjudicated bankrupt. On July 9, 1929 the First National Bank of Shreveport, Louisiana, appellant here, filed its proof of claim upon a note of the bankrupt for $15,000, dated February 20, 1929, secured by chattel mortgage on all furniture and fixtures in all of the bankrupt's stores. The proof of claim set up that the property covered by the mortgage had been sold under order of a state receiver prior to bankruptcy, and that there had been realized from it around $7,000 upon which claimant, by virtue of its mortgage, had a preference.

The trustee and a creditor opposed this claim on the ground that the mortgage was invalid because executed in violation of the Bulk Sales Law of Louisiana, Act 270 of the Laws of 1926. The referee overruled the contest and approved the claim. Upon the petition of the trustee to superintend and revise, the District Judge reversed the referee, sustaining the contest. He found that the mortgage had been given otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the bankrupt, and that by virtue of the statute relied on it was invalid in the hands of the bank. In re Handy-Andy Stores, 51 F.(2d) 98. From a judgment disallowing the claim of the bank to a lien upon the proceeds of the fixtures, but reserving to it the right to file its claim as an unsecured creditor, this appeal is prosecuted.

The bank presents three grounds of attack: (1) That the act invoked is invalid because, in violation of article 3, § 16, of the Constitution of Louisiana, it has more than one object; (2) that the act has been erroneously applied in this case; that it has no reference to a chattel mortgage intended merely as security for a present advance; (3) that if the mortgage was, when given, within the prohibition of the act as not in the ordinary course of trade, and in the regular and usual course of the prosecution

of the business of the Handy Andy Stores, the bank was an innocent purchaser ignorant of the facts which make the mortgage invalid, and therefore unaffected by them.

We think the District Judge correctly disposed of all of these contentions against the bank. Acts of the general nature of the one in question here, designed to promote equity and fair dealing, and invalidating the disposition in bulk of stocks of merchandise, and/or fixtures unless accomplished in accordance with statutory directions, are usual in all the states. Quite a definite and rather uniform jurisprudence has been built up about them and the subject-matter with which they deal. They are constitutional and are liberally upheld and construed so as to fully occupy the field which they have entered. Klein v. Maravelas, 219 N. Y. 383, 114 N. E. 809, L. R. A. 1917E, 549, Ann. Cas. 1917B, 273; Lemieux v. Young, 211 U. S. 489, 29 S. Ct. 174, 53 L. Ed. 295; Kline v. Sims, 149 Miss. 154, 114 So. 871; Rosenberg & Sons v. Waguespack, 167 La. 451, 119 So. 423; Huckins v. Smith (C. C. A.) 29 F.(2d) 907. Within the general purview of this legislation mortgages are commonly understood to come; many of the states have in terms included mortgages within the prohibition. In some of the states the courts have construed the prohibition against transfers to include mortgages, though not in terms mentioned in the acts. In none of them has it been held that a statute specifically prohibiting transfers by way of mortgage is beyond the scope of the statutory power or alien to the subject in hand. In Rapides Packing Co. v. Olla State Bank, 17 La. App. 267, 135 So. 772, 774, the Court of Appeal of Louisiana has upheld the very law under facts quite similar, holding that the placing of a mortgage by a retail merchant on his fixtures, out of the usual course of trade is void as against creditors, unless the Bulk Sales Law is complied with. In that case, quoting from Norton Jewelry Co. v. Maddock, 115 Kan. 108, 222 P. 113, the court said: "The purpose of our statute is to prevent a person engaged in merchandising from disposing of any part of his stock, otherwise than in the ordinary course of his business, to the disadvantage of any of his creditors. * * * Giving a mortgage on a stock of goods is a 'disposal' thereof. Such a transaction is out of the ordinary course of trade or business. * * * It is a complete disposition of the goods, so far as the creditors of the merchant are concerned. It puts those goods beyond the reach of all creditors, except those who may receive the

benefit of the pledge, until the pledgee's claim has been satisfied. So far as creditors are concerned, pledging all or a part of a stock of merchandise is as effective a disposition of the goods pledged as can be made by a sale thereof."

In the light of the generally accepted view of the scope of this legislation, it is a straining at refinement to contend that an act, dealing with the subject-matter of the protection of the creditors of a merchant by preventing the unequal and preferential disposition of his merchandise and fixtures by way of sale or mortgage, contains more than one object. Nor do we think the bank stands any better on its remaining contentions. We think it does not admit of question that the statute, in prohibiting except in compliance with its terms, the mortgaging of all or substantially all of the fixtures used in the conduct of a merchant's business otherwise than in the ordinary course of trade, and in the regular and usual prosecution of business, in clear and unmistakable language interdicts all such mortgages irrespective of whether given for past or present consideration, if they are not in the ordinary course of trade, unless the requirements of the statute insuring the fair and equal treatment of the creditors of the transferror have been complied with. Where a mortgage of fixtures has been made, the only question of fact which arises under the statute is whether the mortgage is in the ordinary course of trade and in the regular and usual prosecution of the transferror's business.

█ The District Judge found that the mortgage in question was unusual, and not in the ordinary course. We think the facts do not admit of any other conclusion. Aside from the direct testimony on the point of the unusualness of the transaction, of Querbes, the president of the bank, that "it was not usual to take a mortgage upon the fixtures of a business concern, it was rarely done" and of McPherson, the vice president, who was the active instrument for the bank in putting the loan through, "that the loan was unusual, that he would not regard it as in the usual course of trade," the whole facts of the case, which are fully set out in the opinion of the District Judge, in their furtiveness, their circumlocution and their result overwhelmingly establish a transaction uniquely extraordinary and out of the usual course of the conduct of a merchant's business. These facts summarily stated are: The Handy Andy Company, in bad circumstances and needing money, approached the

Hicks Company, a creditor to the extent of $8,000, for assistance in obtaining a loan. That company, through Brown, its president, requested Mr. Querbes of the bank to make the loan. This Querbes declined to do upon the credit of Handy Andy, but agreed that the bank would make it if the Hicks Company would guarantee it. Because, however, of the condition of the Handy Andy Company as shown by the statement, which Querbes characterized as "weak," he advised Brown not to guarantee the loan without taking security, and suggested that Handy Andy secure the note with a chattel mortgage covering all of its fixtures. The matters were then turned over to McPherson, vice president of the bank, who, with Brown, president of the Hicks Company, arranged the whole transaction, which, in order to keep the creditors of Handy Andy and the trade generally from knowing that Hicks Company was in any way identified with the loan, took the circuitous route of having Handy Andy Company execute a chattel mortgage to McPherson, the Hicks Company execute its note to the bank for the sum of $15,000 to which was attached in pledge the Handy Andy note and mortgage. The bank caused the proceeds of the Hicks note to be paid to McPherson, by whom it was in turn paid to Handy Andy. Through this circuitous route $15,000 of the bank's money went into the hands of Handy Andy, passing first to Brown, then to McPherson, then into the hands of the bankrupt. This money was distributed by Handy Andy Company in payment in full of the Hicks account and in part of the accounts of others of the creditors, while some of the creditors received nothing.

In addition to the chattel mortgage on all of the fixtures, McPherson exacted from two of the stockholders of the bankrupt, heavy creditors of it to the extent of $20,000, an agreement subordinating their claims as individual creditors to the amount of $20,000 to the claim of his note, on all of the assets of the corporation. This instrument provided: "In the event of bankruptcy we will file our claims for the above amount, and any amounts paid to us in liquidation of the claims shall so far as it shall be necessary, be applied upon the note this day purchased by you." In addition to this agreement and as part of the same plan to fully secure the repayment of the note, the owners of a majority of the common stock of the bankrupt pledged it to the Hicks Company, the instrument of pledge giving that company power to participate in the

voting of the stock, and thus to control the bankrupt company.

These facts not only support, they compel, the conclusion that the transaction was out of the usual and ordinary course of business, that it was in effect an assignment for the benefit of the Hicks Company and some of the other preferred creditors, and that it was not only fully known to the bank, but was conceived and engineered there.

It would be difficult to imagine a more flagrant breach of the prohibition of the statute than this, or a fuller participation in it than that of the bank. In the face of these facts, the claim that it makes that the transaction was not out of the usual course of business, or, if it was, they were innocent of the facts, must be rejected.

The judgment is affirmed.