## MARKWELL & CO. v. LYNCH.

### In re SCHNEIDER'S ESTATE.

### No. 9465.

Circuit Court of Appeals, Ninth Circuit.

Sept. 10, 1940.

Rehearing Denied Dec. 20, 1940.

Grainger & Hunt, of Los Angeles, Cal., for appellant.

Albert Behrstock and Jerome D. Rosenfield, both of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

One Schneider, while insolvent, pledged a portion of his stock in trade as security for a loan. He was subsequently adjudged bankrupt, and the trustee sued to recover the goods or their value on the assumption that the transfer was void under the bulk sales law (§ 3440, California Civil Code), there having been no record of notice of intention to transfer the merchandise.

A special master to whom the case was referred made findings and a report recommending judgment for the trustee. The

trial court approved the report and entered judgment accordingly.

At the date of the transaction, and for many prior years, the bankrupt was a merchant conducting a retail jewelry store. He dealt in diamonds, watches, jewelry, etc., for the retail trade, buying his merchandise from wholesalers located in Los Angeles and in the east. He borrowed $300 from appellant, and as security for the repayment of the loan pledged with appellant certain of his stock in trade of the value of $600. At that time the stock of the bankrupt did not exceed the value of $9,500.

The bulk sales law provides that the transfer of a stock in trade, in bulk, "or a substantial part thereof otherwise than in the ordinary course of trade and in the regular and usual practice and method of business of the" transferor will be conclusively presumed to be fraudulent and void as against existing creditors of the transferor, unless prior to the consummation of the transfer notice of the same is recorded. The questions presented on the appeal are (1) whether the merchandise pledged constituted a substantial part of the bankrupt's stock in trade, and (2) whether the transfer was in the ordinary course of trade and in the regular and usual practice and method of business of the bankrupt.

The findings below affirmed the first of these propositions and negatived the second. We are not disposed to disturb either finding. The pledge by a retail merchant of a substantial part of his stock of goods is a disposal of the goods out of the ordinary course of trade. In re Convisser, 9 Cir., 6 F.2d 177. The good faith of the parties is immaterial. Calkins v. Howard, 2 Cal.App. 233, 236, 83 P. 280.

It should be borne in mind that the statute does not prohibit transfers of this sort. A valid pledge may be made if proper notice has been given so that those extending credit to the transferor may be put on their guard and enabled to protect themselves. We see no good reason to reverse the judgment.

Affirmed.

DENMAN, Circuit Judge (dissenting).

The case of In re Convisser, 9 Cir., 6 F. 2d 177, does not decide that "The pledge by a retail merchant of a substantial part of his stock of goods is a disposal of the goods out of the ordinary course of trade", as stated in the majority opinion. It could not decide that a pledge of goods cannot be made in the ordinary course of trade because that question was not before the court. It did not even lurk in the record.[1] It was admitted by the brief[2] of the petitioner seeking to hold the pledge valid that the pledgor, with the money borrowed on the pledge, "left for [the] parts unknown" referred to in the opinion (6 F.2d at page 177) thus admitting that the pledge was not made in the usual course of trade. The referee in the Convisser case found as a probative fact that "It is evident that the bankrupt in pursuance of a scheme to defraud his creditors converted his stock in trade into money and departed with the proceeds and that his transaction [the pledge] with Newman was a part of such scheme," and as an ultimate fact "that such transfer was not made in the ordinary course of trade and in the regular and usual practice and method of business of the bankrupt; * * *."

The sole contention of the petitioner in the Convisser case in seeking to establish the validity of the pledge was that a pledge is not a "transfer" contemplated by Section 3440. The court held that a pledge is such a transfer.

The necessary result of that decision is that the Act must be read as follows: "* * * provided, also, that the * * * *pledge* of a stock in trade in bulk or a substantial part thereof, otherwise than in the ordinary course of trade and in the regular and usual practice and method of business of the *pledgor* * * * will be conclusively presumed to be fraudulent and void as against the existing creditors of the pledgor * * * unless at least 7 days before the consummation, etc." the notice of intention to pledge be filed with the county recorder.

It follows from this necessary reading of the statute that pledging may be done in the

---

1 "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411.

2 The court takes judicial notice of the records of cases it decides. Lockhart v. Johnson, 181 U.S. 516, 520, 21 S.Ct. 665, 45 L.Ed. 979; Criscuolo v. Atlas Imperial Diesel Engine Co., 9 Cir., 84 F.2d 273, 275; National Fire Ins. Co. v. Thompson, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881.

ordinary course of trade and in the regular and usual method of business of the pledgor.

The business of the bankrupt pledgor here was that of buying and selling jewelry. Buying is as much a part of his business as selling. The master found the repeated instances of pledging parts of the bankrupt's stock in trade to establish his practice of so pledging "to pay merchandise creditors, notes and running expenses." All of these matters for which the various pledges were from time to time made by the bankrupt are usual incidents of the trade of buying and selling any kind of merchandise. There is no contrary evidence, though the burden of proof is on the party claiming the pledge to be invalid. In this aspect of the case it presents only the question of law whether *any* pledge of a substantial portion of a stock in trade may be made in the course of business.

It is suggested that the legislature intended that a pledge, to be valid, must be made by some person whose trade is to make a profit out of pledging his property for purposes of gain. This seems to me a fantastic concept. A pledge merely secures the loan or other advantage gained with the right in the pledgor of redemption of the remaining value of the goods pledged. It seems irrational to construe the Act as if the legislative body contemplated some unknown trade which consists merely of the repeated pledging of one's own property for a profit.

Per contra, since pledging is a normal incident of many trades which consist of buying as well as selling, it is rational to infer the legislature intended that a pledge to enable the trader to buy a part of his stock in trade and to pay the necessary expenses of conducting the trade, out of which he expects his sales to yield a profit, could be shown to be a pledge in the ordinary course of that trade and in the regular and usual practice and method of business of the trader.

I can see no difference with regard to the danger of fraud to creditors between the absence of watches or diamonds from a stock in trade by a transfer by sale in the ordinary course of business and by a transfer by pledge for a loan to be used in the ordinary course of business. In both cases money is received as a result of an absence of the goods from the merchant's stock. In the case of the sale of watches or diamonds, the trader may receive less than he paid for them. In the case of the pledge, the trader receives his loan and retains his interest in the pledge for the balance of the value of the watches or jewels.

Of course, either transaction may be a fraud on creditors. The trader in jewels may sell them for an extraordinary low price and for other benefits which are concealed from his creditors. So may he pledge them for a very low sum, intending to default in payment for the benefit of the lender, who may give him some secret advantage. Here, however, no question of fraud or bad faith is involved.

The views of this dissent are held in the Fifth Circuit in a case not unlike the Convisser case, supra. There an opinion of Judge Hutcheson reviewed the evidence on the validity of the pledge as given in the usual course of business on the theory that: "* * * We think it does not admit of question that the statute, in prohibiting *except in compliance with its terms,* the mortgaging of all or substantially all of the fixtures used in the conduct of a merchant's business *otherwise than in the ordinary course of trade, and in the regular and usual prosecution of business,* in clear and unmistakable language interdicts all such mortgages irrespective of whether given for past or present consideration, *if they are not in the ordinary course of trade,* unless the requirements of the statute insuring the fair and equal treatment of the creditors of the transferror have been complied with. Where a mortgage of fixtures has been made, the only question of fact which arises under the statute is whether the mortgage is in the ordinary course of trade and in the regular and usual prosecution of the transferror's business." (Emphasis supplied) First Nat. Bank of Shreveport, La., v. Sharp, 5 Cir., 54 F.2d 886, 888.

After reviewing the facts which showed an *unusual* single transaction, by which the pledging for a loan was so manipulated that a certain creditor obtained a preference, the opinion continues:

"These facts not only support, they compel, the conclusion that the transaction was out of the usual and ordinary course of business, that it was in effect an assignment for the benefit of the Hicks Company and some of the other preferred creditors, and that it was not only fully known to the bank, but was conceived and engineered there.

"It would be difficult to imagine a more flagrant breach of the prohibition of the

statute than this, or a fuller participation in it than that of the bank. In the face of these facts, *the claim that it makes that the transaction was not out of the usual* course of business, or, if it was, they were innocent of the facts, must be rejected." (Emphasis. supplied) First Nat. Bank of Shreveport, La., **v.** Sharp, supra, 54 F.2d 889.

The judgment should be reversed.