### In re BOWEN.

### No. 21101.

District Court, E. D. Pennsylvania.

Dec. 29, 1944.

David Getz, of Allentown, Pa., Herbert S. Leman, of New York City, and Herman H. Krekstein, of Philadelphia, Pa., for Henry Baker.

Gerald A. Gleeson, U. S. Atty., and J. B. Rettew, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., and Joseph Lawrence, Director, Bond and Spirits Division, Department of Justice, Harry B. DeAtley, Assistant to the Director, Julian D. Simpson, Atty., Department of Justice, and Homer R. Miller, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for the United States.

Fred B. Gernerd, of Allentown, Pa., for trustee in bankruptcy.

Charles M. Bolich, of Allentown, Pa., for bankrupt.

Robert L. Stuart, of Allentown, Pa., referee in bankruptcy.

KALODNER, District Judge.

This matter is before the Court on certificate for review of two orders of a referee in bankruptcy. In one order the referee allowed the claim of the United States for income taxes in the amount of $26,548.99, and the lien of the United States for that claim, which had been previously discharged by an instrument filed in the office of the Prothonotary of Lehigh County on April 14, 1939, was reinstated, the claim being impressed as a lien upon a fund in the hands of the trustee, and was directed to be paid from said fund. In the second order the referee allowed the claim of the government for distilled spirits taxes in the amount of $18,080.15, likewise reinstating the lien which had been previously discharged and ordering payment of the claim out of the fund held by the trustee. These orders were entered after hearings on issues raised by an amended petition filed by the government and an answer filed by Henry Baker, a creditor, whose distributive right in the fund was affected.

When this certificate for review was first before this Court I held (48 F.Supp. 67) that the bankruptcy court had no power or jurisdiction to enter the orders, and the orders were set aside, thereby leaving the discharges of the liens in force. In thus deciding the case, no disposition was made of the issues raised aside from the jurisdictional questions involved.

On appeal, the United States Circuit Court of Appeals for this Circuit, in an opinion reported in 138 F.2d 22, reversed this Court, holding that the bankruptcy court did have power and jurisdiction to set aside the discharges of liens. A writ of

certiorari was denied by the Supreme Court on January 3, 1944.

The issues, aside from jurisdiction, remain to be decided by this Court.

On August 12, 1933, the Bureau of Internal Revenue made an assessment against James K. Bowen for income tax deficiencies of $15,297.68, plus interest of $5,883.53. Notice thereof was filed in the office of the Prothonotary of Lehigh County, Pa. and in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania in October, 1933. On May 22, 1935, an assessment was made against Bowen and others for deficiencies of distilled spirits tax amounting to $13,108.92, notice whereof was duly filed with the said Prothonotary of Lehigh County and the said Clerk of the District Court in May, 1935. These two tax claims became liens against the real estate of Bowen situate in Lehigh County, valid prior to other liens entered after the respective dates of the filing of notices.

In September, 1935, Henry Baker obtained a judgment against Bowen in the Court of Common Pleas of Lehigh County, Pa., in the amount of $79,240.42. Bowen owned various parcels of real estate in Lehigh County. These properties were encumbered by mortgages which were liens prior to those of the United States and of Baker. There were many other judgments entered against Bowen in Lehigh County. Some of these judgments were recorded prior to both tax liens, several intervened between the two tax liens, some intervened between the tax liens and the lien of Baker's judgment, and one was subsequent to the lien of Baker's judgment. Baker, subsequently, acquired four of the intervening judgments by assignments from judgment creditors. The position of these judgments will be shown later.

In December, 1938, Baker filed with the Collector of Internal Revenue for the First District of Pennsylvania at Philadelphia an application for the release or discharge of the liens of the United States as to one of the properties owned by Bowen. This property was situate at 809–11–13 Hamilton Street, Allentown, Pa. The application was made pursuant to section 3186(c) (4) of the Revised Statutes, now section 3674(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3674(b), which provides for the partial discharge of tax liens of the United States. The Act reads as follows

(53 Stat. 449, 26 U.S.C.A. Int.Rev.Code, § 3674(b): "Subject to such regulations as the Commissioner, with the approval of the Secretary, may prescribe, the collector charged with an assessment in respect of any tax may issue a certificate of discharge of any part of the property subject to the lien if there is paid over to the collector in part satisfaction of the liability in respect of such tax an amount determined by the Commissioner, which shall not be less than the value, as determined by him, of the interest of the United States in the part to be so discharged. In determining such value the Commissioner shall give consideration to the fair market value of the part to be so discharged and to such liens thereon as have priority to the lien of the United States."

At that time the Hamilton Street property was occupied by S. S. Kresge Co. under a lease for a term of thirty years from March 1, 1926, at a rental of $25,000 per annum for the first fifteen years, and $30,000 per annum for the balance of the term. Under the provisions of the lease the lessee was to pay real estate taxes assessed against the property, to furnish policies insuring the buildings against fire loss, and was to make all necessary repairs.

All rents under the Kresge lease had been assigned by Bowen to the Lehigh Valley Trust Co. on January 16, 1928, under an agreement whereby it was provided that the Trust Company should collect the rents and apply them in payment of all indebtedness of Bowen to the Trust Company theretofore or thereafter created.

In the application for discharge Baker stated that the rents from the property had been assigned to the mortgagee, that he expected to be obliged to engage in litigation in order to realize on his judgments, and was desirous of obtaining a certificate of discharge of the liens of the United States before proceeding further. Attached to the application was a list of the judgments entered of record against Bowen in Lehigh County, a copy of the assignment of rents, a copy of the agreement between Bowen and the mortgagee under which the assignment of rents was given, a list of mortgages against the property, and two appraisals of the value of the property made by real estate brokers. One appraisal stated the value of the property to be $308,600; the other $314,600.

On March 10, 1939, the Commissioner of Internal Revenue authorized the Collector of Internal Revenue at Philadelphia, Pa., to issue certificates of discharge upon payment of the sum of $150. The Collector of Internal Revenue, upon receiving that sum from Baker, filed certificates of discharge with the Prothonotary of Lehigh County and the Clerk of the District Court in April, 1939, thereby discharging the liens of the tax claims as to the Hamilton Street property.

On November 8, 1939, Bowen filed a voluntary petition in bankruptcy. Subsequently, in August, 1940, the Hamilton Street property was sold by the trustee in bankruptcy for $457,500 clear of liens. After the sale it appeared that the fund realized was sufficient to have paid the tax liens if they had not been discharged. The government thereupon, in January, 1941, filed a petition with the referee to set aside the discharge of the lien of the distilled spirits tax claim and for an order that the lien be paid in the order of its priority, out of the proceeds of the sale of the property. In that petition the government expressly excluded any claim for the income tax deficiency, stating that such claim was barred by operation of the applicable statute of limitations. Subsequently, the government filed an amended petition seeking reinstatement of both liens.

The grounds set forth in the amended petition, for the relief sought, are that the Commissioner of Internal Revenue was misled by Baker's application, first, as to the value of the Hamilton Street property and, secondly, as to the actual amount of the indebtedness on the various prior judgment liens. Baker filed an answer to the amended petition denying that the government officials were misled in any particular, denying that the value of the property was in excess of the appraisals as of the time of the application, averring that the government had made full investigation of all relevant facts, and further averring that the income tax claim was barred by operation of the statute of limitations.

The referee fixed hearings to take testimony on the issues raised by the amended petition and answer. Two such hearings were had, one on January 31, 1941, and the other on February 19, 1941. The evidence taken at these two hearings was transcribed. The government, in support of its petition, introduced into evidence, inter alia, Baker's application for the discharge of the liens, the lease, and various written communications between government officials pertaining to the application, investigation of the merits of the application and the disposition of the application. It also introduced the testimony of various government officials who investigated, considered and acted on the application. Further, it introduced expert testimony as to the value of the Hamilton Street property at the time of the application, and records of the Court of Common Pleas of Lehigh County showing that Bowen had been contesting the validity and enforceability of certain of the judgments in December, 1938. Baker offered no evidence.

It appears that, at the time the application was made, the primary liens consisted of a series of mortgages held by the Lehigh Valley Trust Co., the principal amount of which totalled $294,600.

A list of the judgments including the government liens, entered of record against Bowen in Lehigh County, arranged in chronological order is as follows:

| | Holder | Date of Entry | Amount |
|---|---|---|---|
| 1. | Houston Land & Trust Co. | 3/ 6/31 | $ 4,616.25 |
| 2. | W. I. M. Corporation | 12/ 3/31 | 117.00 |
| 3. | Citizens Trust Co. of Allentown | 12/ 7/31 | 40,000.00 |
| 4. | E. Amanda Marsh, assigned to H. Baker | 11/16/32 | 20,000.00 |
| 5. | U.S.A. Income Tax | 10/ 3/33 | 21,181.21 |
| 6. | Second Natl. Bank, assigned to H. Baker | 12/ 4/33 | 10,000.00 |
| 7. | Liberty Trust Co., assigned to H. Baker | 2/ 8/34 | 20,000.00 |
| 8. | Allentown Trust Co. | 5/24/34 | 10,000.00 |
| 9. | Allentown Trust Co. | 8/ 9/34 | 10,000.00 |
| 10. | Citizens Trust Co. assigned to H. Baker | 1/ 9/35 | 20,000.00 |
| 11. | U.S.A., Distilled Spirits Tax | 5/31/35 | 13,108.92 |
| 12. | Henry Baker | 9/30/35 | 79,240.42 |
| 13. | Leon Darling, Dep. Rec. | 11/13/35 | 17,688.25 |

In Baker's application for discharge he listed and described the foregoing judgments and liens as follows:

### List of Judgments Entered of Record against James K. Bowen in the Court of Common Pleas of Lehigh County

(1) Houston Land & Trust Co. Executor
vs.
James K. Bowen

No. 148—January Term, 1931
Entered of record—March 6, 1931
Amount of Judgment—$4,616.25

Note: This judgment was entered of record on a suit in assumpsit. No affidavit of defense was filed. This judgment was subsequently revised by an amicable scire facias sur judgment as to No. 427 January Term, 1936 in favor of Joseph T. Rudolph of 323 South 17th St., Allentown, Pa. Amount of judgment $3,866.25 with interest from March 6, 1931.

(2) W. I. M. Corporation (of New York City)
vs.
James K. Bowen

No. 75—January Term, 1932
Entered of record—Dec. 3, 1931
Amount of Judgment—$117.00

Note: This judgment was entered on a suit in assumpsit. No affidavit of defense was filed and judgment was subsequently entered.

(3) Citizens Trust Company of Allentown
vs.
James K. Bowen

No. 1067—September Term, 1931
Entered of record—Dec. 7, 1931
Amount of judgment—$40,000.00

Note: This judgment represents a judgment bond which accompanied a mortgage in the just sum of $20,000.00. The aforesaid bond bears date August 15, 1927 and was entered of record on December 7, 1931.

(4) E. Amanda Marsh (Allentown, Pa.)
vs.
James K. Bowen

No. 653—September Term, 1932
Entered of record—Nov. 16, 1932
Amount of Judgment—$20,000.00

Note: This judgment represents a judgment bond which accompanied a mortgage in the just sum of $10,000.00. The aforesaid bond bears date April 10, 1924 and was entered of record on November 16, 1932. This judgment was subsequently assigned to one Milton Casper, of Philadelphia, Pa., and thereafter assigned to Henry Baker, the applicant. Proceedings on a scire facias sur judgment to revive were instituted on October 27, 1937 as to No. 64, January Term, 1938.

(5) Second National Bank (Allentown, Pa.)
vs.
James K. Bowen

No. 680—September Term, 1933
Entered of Record—Dec. 4, 1933
Amount of judgment—$20,000.00

Note: This judgment represents a judgment bond which accompanied a mortgage in the just sum of $5,000.00. The aforesaid bond bears date May 3, 1929 and was entered of record on December 4, 1929. This judgment was assigned to one Milton Casper of Philadelphia, Pa., and subsequently reassigned to Henry Baker, the applicant, as use plaintiff. Proceedings on a scire facias sur judgment to revive were instituted on December 2, 1938 as to No. 131 January Term, 1939.

(6) Liberty Trust Co. (Allentown, Pa.)
vs.
James K. Bowen

No. 447—January Term, 1934
Entered of Record—Feb. 8, 1934
Amount of judgment—$20,000.00

Note: This judgment represents a judgment bond which accompanied a mortgage in the just sum of $10,000.00. The aforesaid bond bears date January 25, 1929

and was entered of record on February 8, 1934. This judgment was assigned to one Milton Casper, of Philadelphia, Pa., and subsequently assigned to Henry Baker, the applicant.

(7) Allentown Trust Co. (Allentown, Pa.)
vs.
James K. Bowen

No. 626—April Term, 1934
Entered of Record—May 24, 1934
Amount of judgment—$10,000.00

Note: This judgment represents a judgment bond which accompanied a mortgage in the just sum of $5,000.00. The aforesaid bond bears date May 25, 1929 and was entered of record on May 24, 1934.

(8) Allentown Trust Co. (Allentown, Pa.)
vs.
James K. Bowen

No. 524—June Term, 1934
Entered of record—Aug. 9, 1934
Amount of judgment—$10,000.00

Note: This judgment represents a judgment bond which accompanied a mortgage in the just sum of $5,000.00. The aforesaid bond bears date November 9, 1929 and was entered of record on August 9, 1934.

(9) Citizens Trust Company (Allentown, Pa.)
vs.
James K. Bowen

No. 268—January Term, 1935
Entered of Record—Jan. 9, 1935
Amount of judgment—$20,000.00

Note: This judgment represents a judgment bond which accompanied a mortgage in the just sum of $10,000.00. The aforesaid bond bears date December 18, 1924 and was entered of record on January 9, 1935. This judgment was assigned to one Milton Casper of Philadelphia, Pa., and subsequently reassigned to Henry Baker, the applicant.

(10) Henry Baker, use plaintiff (565 Fifth Ave. N. Y. C.)
vs.
James K. Bowen

No. 152—September Term, 1935
Entered of record—Sept. 30, 1935
Amount of judgment—$79,240.42

Note: This judgment was entered on a suit in assumpsit. No appearance or affidavit of defense was filed. This judgment bears interest from the date of entry.

(11) Leon Darling, Deputy Receiver for the Dept. of Banking, Use Pltff. (Allentown, Pa.)
vs.
James K. Bowen

No. 269—September Term, 1935
Entered of Record—November 13, 1935
Amount of judgment—$17,688.25

Note: This judgment was entered on a suit in assumpsit. No appearance or affidavit of defense was filed. This judgment bears interest from the date of entry.

Bowen owed the bank various sums in addition to the amounts secured by the mortgages against the Hamilton Street property. He owned at least one other property against which the Trust Company had made mortgage loans. At April 5, 1939, which is the date on which the liens were actually discharged, Bowen owed the Trust Company a total of $359,917.60. As security for these loans the Trust Company held the mortgages and the assignment of rents on the Hamilton Street property, 27 shares of stock of Lehigh Valley Trust Co., and a mortgage of $50,000 on a property at 32-34 N. 9th Street, Allentown, Pa. Hence the future rents under the Kresge lease of the Hamilton Street property could be applied by the Lehigh Valley Trust Co. not only in payment of the mortgages of $294,-600 but also in payment of an additional liability of $65,317.60.

After Baker filed his application for discharge of liens with the Collector of Internal Revenue, it was referred to Ira Hirschberg, a Deputy Collector, within whose scope of duties was the handling of such applications. Mr. Hirschberg is a lawyer and a member of the Philadelphia Bar. He, in turn, referred the application to Chief Field Deputy Haines to make an investigation for the purpose of determining the accuracy of the statements con-

tained in the application, to make a general survey of the property in question and to determine the market value or the forced sale value of the property involved. Mr. Haines sent the application and turned over the investigation to Deputy Collector Russell M. Laudenslager at Allentown, Pa. Laudenslager called at the office of the Prothonotary and at the office of the Recorder of Deeds of Lehigh County. He examined the judgment indexes, the lease and the assignment of the lease. He was familiar with the physical aspects of the Hamilton Street property, having resided in Allentown for over thirty years. He examined the tax assessments and spoke to the tax assessors concerning the value of the property. He obtained from the Lehigh Valley Trust Co. a list of the mortgages and the amounts due thereon. All of the information which he ascertained was reported back to the Collector's Office. In one of his reports he stated, with respect to the value of the property, as follows: "Upon verification of the fair market value and the forced sale value of the above property, I found that the two realtors' appraisals to be correct as they reported. The County appraised the property at $175,000.-00 and the City appraised the property at $180,000.00, which is approximately 70% of the market value and also the sale value at this time." In another report he called attention to the fact that judgments No. 2 and No. 3 had not been revived.

The Collector of Internal Revenue at Philadelphia forwarded the application to General Counsel of the Bureau of Internal Revenue at Washington, D. C., stating that the income tax claim had been reported by him as uncollectible on September 9, 1936, that all of the information contained in the application had been verified and found to be correct, that the property was estimated to be valued at approximately $314,600, and that there appeared to be no equity in the property over and above the amount of the encumbrances which were prior to the liens of the government. He requested that determination be made of the amount that would be acceptable for the issuance of certificates of discharge.

Charles T. Tittman, an attorney in the office of Chief Counsel of the Bureau of Internal Revenue at Washington, reviewed the application and the reports thereon. After studying the application and the information he had received from the Collector of Internal Revenue at Philadelphia, he consulted with an attorney in the Distilled Spirits Division of the Department of Justice concerning the same, and then reached the same conclusion as had the Collector of Internal Revenue at Philadelphia, namely, that the United States could not realize anything on its tax liens against the Hamilton Street property. He, thereupon, prepared a letter for the signature of the Commissioner of Internal Revenue to authorize the discharge of the liens upon payment of the sum of $150, which was an amount determined by him. The letter, which was dated March 10, 1939, after passing through various other departments for approval, was finally signed by the Commissioner and forwarded to the Collector of Internal Revenue at Philadelphia.

When Tittman computed the amounts of the mortgages and liens which preceded the first lien of the United States, he disregarded judgments No. 2 and No. 3 because he knew that the lien of those judgments had not been revived, but had lapsed. He only considered judgments No. 1 and No. 4. His computation of prior liens was as follows:

| | |
|---|---:|
| Lehigh Valley Trust Co. mortgages | $294,600.00 |
| Houston Land & Trust Co., judgment No. 1 | 3,866.25 |
| E. Amanda Marsh, judgment No. 4 | 20,000.00 |
| Total | $318,466.25 |

Upon comparing that amount with the appraisals of the property of $308,600 and of $314,600, which were attached to the application and with the report of Deputy Collector Laudenslager, which indicated an even lower value, he concluded that the liens of the government against the property in question were valueless. Mr. Tittman testified that if he had known (1) the details of the Kresge lease, (2) that litigation was pending concerning the validity of three of the judgments (one of which was judgment No. 4), and (3) that the judgments on the mortgage bonds were enforceable for only one-half of the face amount thereof, he would not have authorized the discharge of the liens for $150. Tittman did not take into consideration any additional indebtedness of Bowen to the Lehigh Valley Trust Co. to secure repayment of which the rents had been assigned. Nor did he consider any interest on the judgments or any costs which were includ-

ible in computing the amounts for which the judgments might be enforceable.

Six witnesses gave expert testimony as to the value of the property at about the time the tax liens were discharged. Among these were the two real estate brokers whose appraisals had been attached to the application. These two appraisers maintained that the properties were valued at the amounts set forth in their appraisals. The other four experts testified to values which ranged from $434,000 to $475,000.

After the taking of testimony was closed, various other hearings were had before the referee on matters pertaining to other issues in the bankruptcy proceedings and to the general administration of the bankrupt estate. At several of these other meetings there was some evidence that might indicate that Baker had some interest in the purchase of the Hamilton Street property from the trustee in bankruptcy.

The referee ordered the discharge set aside and the liens reinstated for the following reasons:

(1) The discharges were fraudulently obtained;

(2) There was gross inadequacy of consideration for the discharges, with accompanying inequitable circumstances;

(3) To hold otherwise would result in the "potential unjust enrichment" of Henry Baker at the expense of the United States; and

(4) Baker had failed to comply with the requirements of the statute providing for the partial discharge of liens.

The only conflicting evidence of any consequence in this case is found in the testimony of the experts concerning the value of the Hamilton Street property. This testimony was all introduced by the government. Except as to value, such findings of fact as were made by the referee are deductions and inferences from established facts.

■ Where the findings of the referee represent deductions from established facts, they are entitled to little weight on certificate for review because the judge, from the same facts, could as well draw inferences or deduce conclusions as the referee. Ohio Valley Bank v. Mack, 6 Cir., 1906, 163 F. 155, 24 L.R.A.,N.S., 184; Baumhauer v. Austin, 5 Cir., 1911, 186 F. 260; Matter of M. & M. Manufacturing Co., Inc., 2 Cir., 1934, 71 F.2d 140; Matter of Hercules Gasoline Co., 9 Cir., 1935, 76 F.2d 677; Matter of Gustav Schaefer Co., 6 Cir., 1939, 103 F.2d 237; In re Eisenberg et al., D.C., 41 F.Supp. 482, affirmed 3 Cir., 1942, 130 F.2d 160.

■ Even where there is conflicting evidence the findings of the referee are not conclusive on the reviewing judge. Free v. Shapiro, 4 Cir., 1925, 5 F.2d 578; Matter of Handy-Andy Stores, D.C. La., 1931, 51 F.2d 98, affirmed 5 Cir., 1932, 54 F.2d 886; Matter of Eastern Oil Co., 9 Cir., 1938, 100 F.2d 341.

■ The referee found that the value of the Hamilton Street property was in excess of the appraisals and that Baker knew such to be the fact when he made his application for discharge. Whether or not the property was, in fact, worth substantially in excess of $314,600, at the time of the filing of the application, is questionable. The testimony of the experts, all introduced by the government, shows the usual conflict where experts testify as to value. Their opinions of the value range from $308,600 to $475,-000. The fact that the property was sold for $457,500 twenty months after the application was made is not necessarily determinative in view of the fact that all of the experts admitted that there was a rising trend of real estate values in Allentown during that period.

There is no evidence that the appraisals attached to Baker's application were not honestly made by the real estate brokers. These statements were no more than their opinions of the value of the property at the time. Unless Baker knew otherwise, those statements form no basis whatsoever for any charge of fraud.

■ The referee, in finding that Baker knew the properties to be worth more than was indicated by the appraisals attached to his application, relied largely on evidence that Baker purchased the property from the trustee in August, 1940, for $457,500, and on his failure to testify. I would not draw the same conclusion even if Baker was in fact the highest bidder at the sale. He might have been bidding to protect the amounts of his judgments, irrespective of his opinion as to the value of the property. He held judgments which would not be entirely satisfied even though the sales price were higher. Further, a considerable period of time intervened between the time of the filing of the application and the time of the sale. But the referee, in finding that Baker purchased the property, relied on

testimony and documents that were not offered or introduced at the hearings on the issue concerning the discharge of the liens. Such evidence may appear elsewhere in the bankruptcy proceedings but was not presented at the hearing of this case. Such testimony may not be considered. Interstate Commerce Commission v. Louisville & Nashville R. Co., 1913, 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431; United States v. Abilene & Southern R. Co., 1924, 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016; In re Aughenbaugh, 3 Cir., 1942, 125 F.2d 887.

■■ Baker's failure to testify does not warrant any inference of dishonesty. The government did not aver in its petition that he knowingly misrepresented or concealed any facts or that he intended to mislead the Commissioner. Hence he could not be expected to anticipate any finding with respect to knowledge or intention, when it was not in issue. The testimony does not establish that Baker knew the property to be worth more than was shown by the appraisals.

■ Aside from the question of fact involved, it has been firmly established as a rule of law that a representation of value expressed as an opinion cannot form the basis for an action of fraud. Gordon v. Butler, 1882, 105 U.S. 553, 26 L.Ed. 1166; Byers v. Federal Land Co., 8 Cir., 1924, 3 F.2d 9; Roosevelt v. Missouri State Life Insurance Co., 8 Cir., 1935, 78 F.2d 752; Sacramento Suburban Fruit Lands Co. v. Melin, 9 Cir., 1929, 36 F.2d 907; Reid v. Shaffer, 6 Cir., 1918, 249 F. 553; Rothermel v. Phillips, 1928, 292 Pa. 371, 141 A. 241; Klerlein v. Werner, 1932, 307 Pa. 16, 160 A. 719; Moore v. Steinman Hardware Co., 1935, 319 Pa. 430, 179 A. 565; Binns v. Copper Range Co., 1939, 335 Pa. 257, 6 A.2d 895.

The proposition is stated in 37 C.J.S., Fraud, § 10, pp. 226, 227, as follows: "The general rule is that the mere expression of opinion or belief, or, more precisely, a representation which is expressed and understood as nothing more than a statement of opinion, cannot constitute fraud. To be actionable, a false representation must be one of fact as distinguished from an expression of opinion, which ordinarily is not presumed to deceive or mislead, or to influence the judgment of the hearer, and on which he has no right to rely, since he is assumed to be equally able to form his own opinion. Thus there can be no redress for error in representations which are expressed and understood as mere estimates or judgments * * *."

■ Further, the referee found that Baker concealed, first, the details of the lease; second, that litigation was pending with respect to the validity or enforceability of several of the judgments; third, the fact that the liens of several of the judgments had expired; and fourth, that the mortgage bond judgments were not enforceable for their face amount.

The record does not disclose any concealment whatsoever by Baker of any material fact. The lease with S. S. Kresge & Co. was referred to and its place of record in Lehigh County was stated in the application. The Deputy Collector charged with investigating the truth or falsity of the statements set forth in the application had access to a copy of the lease. With respect to the litigation which was pending as to the validity of judgments, the Deputy Collector making the investigation not only had access to the records but did, in fact, examine the judgment indexes and dockets. The only contested judgment which Tittman considered in computing the amount of the liens senior to the first government lien was the Marsh judgment (No. 4). A scire facias had been issued to revive the lien of that judgment and an answer had been filed challenging the validity or enforceability of the judgment. The issue was still pending in December, 1938. Ultimately the Supreme Court of Pennsylvania sustained the enforceability of the judgment. Hence the fact that litigation was pending was not a material factor. Baker in his application showed that he intended to litigate his rights with Bowen.

With respect to the amounts of the judgments, it is difficult to conceive how the government can argue, or the referee can sustain, a contention that Baker misrepresented or concealed either the nature of the judgments or the amounts due thereon. He disclosed in his application that the judgments were entered on bonds which accompanied mortgages and he set forth the amounts of the mortgages. Further in every such instance he disclosed that the mortgage was one-half of the amount of the judgment. Deputy Collector Hirschberg, who acted for the Collector of Internal Revenue, knew what sort of judgments they were.

With respect to the judgments as to which liens had expired, a scrutiny of the

application fails to show any misstatement or any attempt to mislead. Baker attached to his application a list of judgments which was not necessarily a list of liens against specific property. Whether or not some or all of such judgments were liens would involve a legal conclusion. The list did not purport to be other than a list of judgments arranged in chronological order. Where the judgment was revived, such fact was so stated. Where a writ of scire facias had been issued to revive, such fact was so stated.

Further, no one was misled by any misconception as to which of the judgments were actually liens against the property. The officials who acted for the government ascertained for themselves and knew which judgments were no longer liens against the property in question.

The most that the government may have established is that Tittman was incautious in determining the value of the prior liens without fully understanding the nature thereof. It is doubtful, however, that Tittman would have acted differently or reached any different conclusion had he fully understood all details concerning the judgments. In valuing the mortgages he apparently gave no weight whatsoever to the assignment of rents. The rents were assigned not only to secure the mortgages against the Hamilton Street property but were held by the Lehigh Valley Trust Co. to secure any other indebtednesses of Bowen. In April, 1939, when the liens were discharged, the actual indebtedness of Bowen to the Trust Company was $359,-917.60. To secure that indebtedness the Trust Company held four securities. In order to accurately ascertain the amount required to discharge the Hamilton Street property of its mortgages and of the burden of the assignment of rents, it would have been necessary to value the property at 32–34 N. 9th Street, Allentown, Pa., and the 27 shares of stock of Lehigh Valley Trust Co. No attempt was made by anyone to make such valuations.

In ascertaining what influenced the Commissioner of Internal Revenue and other officials to determine that the tax liens were valueless, it is appropriate to examine the written statements made by the Collector and by the Commissioner in acting on the application.

The Collector in a letter to the Commissioner dated January 4, 1939, said that the income tax claim was "reported as uncollectible on Form 53 under date of April 7, 1936." The letter of the Commissioner to the Collector dated March 10, 1939, wherein he authorized the discharge, stated, "No payments in reduction of the income tax liability appear to have been made and on Form 53 it was reported as uncollectible on April 7, 1936. The income tax liability was abated as uncollectible on September 9, 1936." Hirschberg testified as to the meaning of those statements. He said that they indicated that after investigation by the Collector, it had been determined that the income tax claim was uncollectible in 1936. Undoubtedly, this had some effect on the judgment of the Collector and the Commissioner in determining that the liens were still valueless in 1939. In that connection it must be kept in mind that the determination in 1936 of the worthlessness of the tax lien was made long before Baker filed his application for discharge, and independent of any statements or representations by him.

A further fact of some significance appears in the letter of the Acting Commissioner of Internal Revenue to the Department of Justice dated October 4, 1940, which is attached to the amended petition of the United States. The following appears in that letter: "Subsequent to the execution of the discharge, charges were made on numerous occasions on Bowen's behalf, both to the Department of Justice and to this office, that the property was worth much more than was indicated by the information supplied to this office at the time the discharge was authorized. As a result, an investigation was made by Special Agent Edwin D. Harrington, whose report of July 13, 1939, indicated that the property was worth not more than what was indicated by the information on which this office proceeded in authorizing the discharge. A copy of the report was forwarded to Mr. Joseph Lawrence, Director, Bonds and Spirits Division, Department of Justice, in a letter from the Chief Counsel for the Bureau dated August 4, 1939."

Three months after the discharge was given, another investigation confirmed the opinion, held by the Commissioner since 1936, that the tax liens were worthless.

The referee disregarded entirely the effect of the investigations conducted by the government. The evidence of the government shows that it did conduct its independent investigation as to the value of the Hamilton Street property and as to the

value of the liens and encumbrances on the property which preceded the liens of its tax claims. Where a party does not rely on the statements of another, but makes his own independent investigation, he cannot charge that he was defrauded by the false representations of the other party. Sacramento Suburban Fruit Lands Co. v. Klaffenbach et al., 9 Cir., 1930, 40 F.2d 899; Mahaffey v. Ferguson, 1893, 156 Pa. 156, 27 A. 21. This rule is discussed in 37 C.J.S., Fraud, § 36, pp. 284-286, as follows: "One cannot secure redress for fraud where he acted in reliance on his own knowledge or judgment based on independent investigation. This rule is especially applicable where the representee's investigation was undertaken at the suggestion of the representor. If it is established that the representee relied on his own judgment and not on the representor's statements, he cannot recover, even though he was genuinely deceived by the representations and his investigation was of an incomplete or ineffectual character."

The rule is thus stated in Pomeroy's Equity Jurisprudence, vol. 3, 5th Ed., 1941, § 893: "If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it."

In Shappirio v. Goldberg, 1904, 192 U.S. 232, 24 S.Ct. 259, 48 L.Ed. 419, it was said: "When the means of knowledge are open and at hand, or furnished to the purchaser or his agent, and no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor." At pages 241, 242, 24 S.Ct. at page 261, 48 L.Ed. 425.

 As to the conclusion of the referee that the discharge must be set aside because of the gross inadequacy of consideration, I am unable to concur. Mere inadequacy of price is no ground for setting aside a contract. In rare cases such gross inadequacy of consideration as shocks the conscience of the court has been held to be sufficient to warrant a finding of fraud. This is not such an instance. The cases cited by counsel for the government and by the referee are neither analo-

gous nor in point. The rule and its limitations are stated in Pomeroy's Equity Jurisprudence, Vol. 3, 5th Ed. 1941, § 928, as follows: "If there is nothing but mere inadequacy of price, the case must be extreme, in order to call for the interposition of equity. Where the inadequacy does not thus stand alone, but is accompanied by other inequitable incidents, the relief is much more readily granted. But even here the courts have established clearly marked limitations upon the exercise of their remedial functions, which should be carefully observed. The fact that a conveyance or other transaction was made without professional advice or consultation with friends, and was improvident, even coupled with an inadequacy of price, *is not of itself a sufficient ground for relief, provided the parties were both able to judge and act independently, and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstance of oppression.*" (Emphasis supplied)

The representatives of the government who acted on the application were fully qualified to judge and act independently. There is not a scintilla of evidence anywhere in the entire record to sustain even an inference that they were exposed to undue influence or circumstances of imposition. The mere fact that events which transpired two years later indicated that their judgment was faulty, lays no basis for a charge of fraud. The value of the tax liens in December, 1938, or in April, 1939, was extremely dubious. Many factors concerned with such value were uncertain. Litigation was required in order to make any fund available for liens junior to the mortgages. The assignment of the income from the property was a most uncertain and unsettled factor. It was not known what amount would be required to discharge the assignment. Further, the actual value of the Hamilton Street property was uncertain.

 The referee's conclusion that the discharge of liens should be set aside because of the "potential unjust enrichment" of Henry Baker at the expense of the United States is based on a theory which has no application to this case. If the funds had already been distributed to Baker, and if the discharge had been obtained through fraud, then an action could be maintained by the United States to recover

such funds to prevent the unjust enrichment of Baker. But to say that to prevent such unjust enrichment is in itself a ground for directing the undistributed fund to be distributed to the United States is not supported by any recognized theory of law. If the fund had already been distributed, fraud or mistake must still be established in order to restore the funds to those equitably entitled thereto. Whether the government of the United States is equitably entitled to the fund, distributed or undistributed, is the question at issue in this case, and that question must be resolved by the determination of whether or not Baker has been guilty of fraud.

I can see no basis whatsoever for the conclusion of the referee that the discharge must be set aside on the ground that Baker failed to comply with the requirements of the statute or regulations governing the discharge of liens. Treasury Dec. 4446, approved July 10, 1934, amending Treasury Dec. 4275, governing the discharge of property from federal tax liens, sets forth the procedure for the filing of the application, the information required to be contained therein, and the procedure to be followed by the Commissioner. I cannot see wherein the application filed by Baker failed to follow the procedure outlined in the regulations, or to set forth the required information, and do not feel called upon to decide whether or not a deviation from such procedure or the failure to furnish all of the information required under the regulations would be sufficient justification for setting aside a discharge granted on such an application.

■ Irrespective as to whether or not discharges of the two tax liens should be set aside, collection of the income tax deficiency is barred by the provisions of 53 Stat. 87, 26 U.S.C.A. Int.Rev.Code, § 276 (c), which provides as follows: "Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

The income tax assessment was made on August 12, 1933. Bowen was adjudicated a bankrupt on November 8, 1939. No distraint or proceeding in court was instituted for the collection of that tax within six years after the assessment of the tax or prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer.

■ The purpose of the act was to fix the time beyond which steps to enforce the collection might not be initiated. United States v. Havner, 8 Cir., 1939, 101 F.2d 161. It has been similarly held under earlier Revenue Acts providing for like limitations of actions. Aiken v. Burnet, 1931, 282 U.S. 277, 51 S.Ct. 148, 75 L.Ed. 339; United States v. Updike, 1930, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Russell v. United States, 1929, 278 U.S. 181, 49 S.Ct. 121, 73 L.Ed. 255.

■ The referee held that Baker, by reason of his inequitable conduct, was estopped to set up the bar of the statute of limitations. Assuming that Baker had obtained the discharge of liens through fraud, the question still would remain as to whether Baker's conduct had induced the government to refrain from instituting proceedings and thus stop the running of the period of limitations. The question, simply stated, is this: If Baker had not made any application for discharge of the liens, would the government have taken steps to stop the running of the statute? There is no testimony on that point. However, it appears that in 1936 the government, after investigating the collectibility of its income tax claim, had concluded that it was uncollectible. If it is the practice of the Treasury Department to distrain or to institute a proceeding for collection of an income tax deficiency which it deems uncollectible, then surely it would have taken such steps whether or not Baker filed an application for discharge of the lien of such tax. Baker's application did not lead any of the government officials to believe differently than they had believed prior to the filing of his application. Hence, it must be concluded that the government was not moved to refrain from distraining or instituting a proceeding for collection of the income tax claim by reason of Baker's conduct. Accordingly, one

of the essential elements of an estoppel is missing. Baker is not estopped from setting up the bar of the statute. Collection of the income tax claim is barred.

Baker questioned the computation of the interest on the two claims of the government. Since these two claims cannot participate in the fund, it is unnecessary to pass on that question.

For the reasons stated, the orders of the referee are reversed.

An order may be submitted in accordance with this opinion.